Stupka, Appellant, *v.* Peoples Cab Company.

510 

Argued September 30, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

 

*Gerald N. Ziskind,* for appellant.

*Robert A. Cohen,* for appellee.

OPINION BY MR. JUSTICE COHEN, May 22, 1970:

It is clear that plaintiff, appellant, is not asserting that appellee caused her physical injuries but rather that appellee caused her financial harm by not obtaining the name or license number of the driver whose car struck the cab from the rear. As there are no prior cases on this particular subject, appellant would have this Court create and impose on cab companies the duty to obtain sufficient information about individuals involved in traffic accidents with cabs to enable cab passengers at least to know against whom to bring suit.

Common law courts have been reluctant to impose affirmative duties on individuals even in situations in which most people would feel under a moral obligation to act. The Restatement (Second), Torts, §314 (1965) states that as long as the actor's conduct has not placed another in peril "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." This Court, in *Yania v. Bigan,* 397 Pa. 316, 321-2, 155 A. 2d 343, 346 (1959), stated: "Lastly, it is urged that Bigan failed to take the necessary steps to rescue Yania from the water. The mere fact that Bigan saw Yania in a position of peril in the water imposed upon him no legal, although a moral, obligation or duty to go to his rescue unless Bigan was legally responsible, in whole or in part, for placing Yania in the perilous position." Behind this is the "rugged individualism" approach of the common law and "the feeling that it is a more serious restraint on personal freedom to require a person to act than it is to place limits on his liberty to act." McNiece and Thornton, *Affirmative Duties in Tort.* 58 Yale L. J. 1272, 1288 (1949).

In recent years, however, there have been attempts to mitigate the harshness of this rule. Usually the

basis for the departure from the general rule has been the existence of a special relationship between the parties which, it is felt, is sufficient to transform the moral duty into a legal one. 2 Harper and James, *The Law of Torts,* §18.6 at 1048 (1956); Note, *Good Samaritans and Liability for Medical Malpractice,* 64 Col. L. Rev. 1301, 1316 (1964). Thus, as to common carriers, the Restatement (Second), Torts, §314A (1965) states "A common carrier is under a duty to its passengers to take reasonable action (a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Case law gives support to that position. *Yazoo & M.V.R.R. v. Byrd,* 89 Miss. 308, 42 So. 286 (1906); *Korn v. Tamiami Trail Tours, Inc.,* 108 Ga. App. 510, 133 S.E. 2d 616 (1963).

It must be noted, however, that this imposition of legal duty only applies to the physical well-being of the passenger. Appellant does not contend that appellee refused to offer assistance after she suffered her injuries. Rather, she states that appellee did not act to protect her financial interests. This is a step towards making a common carrier the guardian of all its passengers' interests that no court has yet taken. "The courts seem to have been somewhat more willing to impose liability on this basis when there has been physical injury to persons or property than where the injury is to the interest in financial advantage." 2 Harper and James, supra, §18.6, n. 7 at 1046.[1] The interest in the passenger's physical well-being is sufficiently import-

---

[1] The dissenting opinion, while imposing a burden on appellee, makes no distinction between the passenger's physical well-being and financial interests.

ant to require the carrier to act to protect it even when the injury is no fault of the carrier's. The interest in the passenger's financial well-being, however, seems of a much lesser magnitude and not of sufficient weight to overcome the traditional judicial reluctance to impose affirmative duties.[2] This is true at least where the carrier is not responsible for placing the passenger in the original position of peril. An individual's financial interests can be so complex and varied that we should not require the carrier to be cognizant of them and responsible for furthering and protecting them.

Order affirmed.

Mr. Chief Justice BELL, Mr. Justice EAGEN, and Mr. Justice POMEROY join in this opinion.

CONCURRING OPINION BY MR. JUSTICE JONES:

On March 21, 1967, the plaintiff, Myrtle J. Stupka, was a passenger in a taxicab operated by Peoples Cab Company [Peoples] when it was struck in the rear by another vehicle. The taxicab was stopped at the time of the accident and there is no claim that the accident was in any way caused by the actions of the cab driver.

---

[2] While the Act of April 29, 1959, P. L. 58, §1217, as amended June 2, 1965, P. L. 93, §1, 75 P.S. §1217, does require the operator of a motor vehicle involved in an accident resulting in bodily injury to file a report of the accident with the Department of Motor Vehicles, this is a duty that runs to the Commonwealth and not to any particular individual. The penalty for violating that section is a fine of $10 or a maximum of five days in prison. The dissent would have us transform that duty to one in favor of any person injured in the accident and impose as a penalty for noncompliance not the nominal fine of $10 but the total amount of damages suffered by that individual. Thus, we would be imposing an affirmative duty in the sense of imposing a much more serious sanction for failure to act than the statute imposes.

Plaintiff averred in her complaint that, immediately after the accident, the taxicab driver got out of his cab and spoke with the driver of the other vehicle, but did not secure that driver's name or license number before the unknown driver left the scene of the accident. On these facts, plaintiff sought recovery from Peoples [Peoples]. Her theory was that the taxicab driver owed her a duty to secure the hit-and-run driver's name and license number, and that his failure to perform that duty constituted such negligence so as to permit her to recover from Peoples for her injuries.

The Court of Common Pleas of Allegheny County, in passing upon People's preliminary objections to the complaint of plaintiff, held that the carrier owed no duty to the passenger to investigate the facts of the accident so as to aid the passenger in possible future litigation and, therefore, sustained People's preliminary objections. Plaintiff then appealed to this Court.

Initially, it should be mentioned that this appears to be a totally unique claim by the plaintiff. Our research fails to locate any case in any jurisdiction even vaguely apposite to the case at bar. However, whether this taxicab driver's failure to question the operator of the other vehicle constituted negligence need not be decided.

The plaintiff's recovery is barred unless she can establish that this failure somehow caused her injuries. *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A. 2d 261 (1965). The facts pleaded by the plaintiff clearly establish that her injuries were caused by the apparently negligent driving of an unknown third party. Even if this were to create a duty on the part of the taxicab driver to secure the other driver's name and license number, the breach of that duty in the case at bar was still not the proximate cause of the appellant's injuries. Such a breach, at most, prevented plaintiff from suing the unknown driver. However, we have no

basis to conclude that the suit would have been successful. It would, therefore, be impossible to assess damages against the appellee in any case. If the measure of damages were taken to be the amount of plaintiff's injuries, this Court would effectively be making either one of two unjustified findings: (1) the Court would be declaring that plaintiff would have won her action against the unknown driver, and we have no power to so declare; (2) the Court would be stating that appellee's breach *caused* the injuries of the plaintiff, which it did not.

The reason for such an unsatisfactory dilemma is that there is no causal relationship between the appellee's failure to act and the plaintiff's injuries. Even in jurisdictions which permit recovery where a carrier has failed to assist a passenger who has been injured en route, any recovery is limited to the aggravation of injury which is directly attributable to the carrier's delay or failure to render assistance. Annot., 92 A.L.R. 2d 656, 658 (1963). Recovery must be limited to compensation for the physical injuries directly caused by the carrier's action or inaction. In the case at bar, plaintiff's injuries were not caused by any act or omission to act on the part of the appellee and consequently, plaintiff has not pleaded sufficient grounds upon which to base a cause of action against the appellee.

The court below properly sustained the People's preliminary objections.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I do not agree with the conclusion reached by the majority. I believe that Peoples is liable to the plaintiff and that the task of determining the amount of such liability is readily soluble.

While I am in total agreement with the view of the concurring opinion that the physical injuries suffered by the plaintiff did not result from the negligence of Peoples, I am convinced that Peoples' breach of duty made it impossible for the plaintiff to recover from the unknown party whose negligence actually caused the physical injuries. In my view, this breach of duty imposes liability on Peoples.

I do not contend that Peoples had a duty "to investigate the facts of the accident so as to aid the passenger in possible future litigation", but I do believe that Peoples had a simple duty to ascertain the identity of the other driver when he was readily available and did, in fact, converse with Peoples' driver subsequent to the accident. Such a duty on behalf of its passenger is surely not too much to impose upon a common carrier. When Peoples failed to perform this simple duty, it rendered impossible a recovery by the plaintiff against the unknown driver. It is for this reason that I believe Peoples is liable and not because there is a causal connection between Peoples' negligence and the plaintiff's physical injuries.

The majority opinion refuses to recognize this duty, labelling it a "moral" duty as opposed to a legal one. It reasons that, despite the trend in the law towards the conversion of moral duties into legal ones where a special relationship, such as common carrier and passenger, exists between the parties, such a trend should only be followed where the interest being protected is the passenger's physical well-being as opposed to his financial well-being. It argues that the interest in a passenger's financial well-being is outweighed by an interest in not imposing an affirmative duty to act on the carrier where it was not responsible for placing the passenger in the original position of peril.

Even if I could accept the general thesis that a distinction should be drawn between physical and finan-

cial well-being[1] as to whether *further* affirmative duties should be imposed, that thesis is clearly inapplicable to the instant case. The freedom of the carrier to act is not at stake at all here. For the carrier already has the affirmative duty to perform the acts involved in this case. The Act of April 29, 1959, P. L. 58, §1217, as amended June 2, 1965, P. L. 93, §1, 75 P.S. §1217, requires the operator of any motor vehicle involved in an accident resulting in *inter alia,* bodily injury, to furnish a report of the accident to the Department of Motor Vehicles, upon forms furnished by the Department. These forms, of course, require the identity of the operators to be supplied. The fact that the penalty for violation of this duty is small does not make it any less a duty. Where the carrier already has the duty, albeit to the Commonwealth, to ascertain the identity of the other driver, it is nonsense to contend that the court is protecting individual freedom by denying plaintiff's recovery for the carrier's failure to act.

The concurring opinion concludes that it would, in any event, be impossible to determine damages. It opines that we would have no way of determining whether plaintiff would, in any event, have been successful in an action against the unknown driver. It seems to me that that question should not deprive the plaintiff of a cause of action. I see no reason why, in a suit against Peoples, all of the evidence which might have been presented against the unknown driver could not be presented, and why a jury could not determine the liability of the unknown driver and the amount of plaintiff's damages. The only difference would be that Peoples would be required to pay these damages not because, I repeat, Peoples' negligence caused the physical injuries, but rather because Peoples' negligence pre-

---

[1] The law has striven, through damages for pain and suffering, to equate physical and financial well-being.

vented the plaintiff from maintaining a cause of action against the party who did cause the physical injuries.[2]

*Richette v. Pennsylvania R.R.*, 410 Pa. 6, 187 A. 2d 910 (1963), offers some help. In that case, Attorney Richette had entered into a one-third contingent fee contract with a client who had a cause of action against the railroad. Subsequently, the railroad interfered with Richette's contractual relationship with his client, induced the client to discharge Richette and entered into a direct settlement with the client. Richette sued the railroad and recovered $10,000.00 in compensatory damages, even though the amount of the settlement was only $8,500.00. Richette had testified in his suit against the railroad that he expected a verdict of $30,000.00 had his client's case against the railroad come to trial. The jury apparently accepted that $30,000.00 evaluation and awarded Richette $10,000.00 as compensatory damages.

In that case, we had no problem with determining whether the plaintiff, Richette's client, would have won his action against the railroad. Nor can we say that the problem was eliminated by reason of the settlement, a settlement never being an admission of liability. Nor did we have any difficulty in allowing a recovery based upon the amount which Richette's client might have recovered in a suit against the railroad.

I see no greater problem in the instant case than in *Richette*. I would reverse the order of the court below and allow the action to proceed to trial.

Mr. Justice ROBERTS joins in this dissent.

---

[2] This is the exact procedure which would be followed in the arbitration of an uninsured motorist case, especially in those instances where the hit-and-run provisions of the uninsured motorists' coverage became applicable.