**Aziz ELIAS, Appellant,**

v.

**LANCASTER GENERAL HOSPITAL.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1998.

Filed March 30, 1998.

Richard J. Orloski, Allentown, for appellant.

Robert A. Evarts, Lancaster, for appellee.

Before POPOVICH and JOYCE, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

Aziz Elias appeals from the order entered in the Court of Common Pleas of Lancaster County sustaining appellee Lancaster General Hospital's preliminary objections and dismissing Elias' spoliation action. We affirm.

Elias wears a cardiac pacemaker and has required the aid of one for several years. On December 27, 1994 Elias fell. During the fall, his pacemaker's lead wires were severed and became lodged in his heart. Elias was immediately transported to Lancaster General Hospital (Hospital) where surgeons successfully removed the wires and replaced them with new wires. Almost two years later Elias requested that the hospital produce the extracted wires so that he could utilize them as evidence in a potential products liability action against the wires' manufacturer, Pacesetter Systems, Inc. (Pacesetter). By this time, however, Hospital had discarded the wires and was, therefore, unable to comply with Elias' request.

Elias never commenced an action against Pacesetter.[1] Instead, Elias initiated the

---

1. Elias believed that he could not prevail in a defective product action against Pacesetter, because he could not sustain his burden of proving a defect absent production of the allegedly defective product, i.e. the lead wires. In light of our conclusion we need not pass judgment on Elias' belief.

present action against hospital by filing a complaint alleging negligent spoliation of the wires. Hospital filed preliminary objections asserting that the Commonwealth of Pennsylvania does not recognize a cause of action for spoliation of evidence. The trial court sustained the preliminary objections and dismissed Elias' complaint. This appeal followed. Elias presents the following issue for our consideration:

> Whether Pennsylvania should recognize a cause of action in tort against a third-party who discards relevant evidence in an existing or probable civil case where a special relationship exists between the plaintiff and the alleged spoliator?

Our standard of review of an order sustaining preliminary objections is well settled.

> We must accept all material facts set forth in the complaint as well as all the inferences reasonably deducible therefrom as true. The question presented by a demurrer is whether, on the facts averred, the law says with a certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Powell v. Drumheller*, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).

Elias urges this court to recognize a separate cause of action for negligent spoliation of evidence in cases where a third party destroys evidence that is material to a poten-

tial civil action. We commence our analysis by noting that no appellate court in this Commonwealth has recognized a distinct cause of action for spoliation of evidence either by a party litigant or a third party.[2] A minority of our sister jurisdictions have chosen to recognize a separate cause of action for spoliation of evidence against a party litigant principally citing the desire to discourage malfeasance on the part of the party litigant. *See generally* 70 A.L.R.4th 984 (collecting cases)[3]. Courts that have refused to recognize the tort of spoliation of evidence explain that there is no need for a separate cause of action because adequate remedies such as adverse inferences, burden shifting, and other sanctions exist to protect a litigant from another litigant's actions. *Id.*

We decline to express a specific view on whether a separate tort is needed where an adverse party to litigation spoils evidence, since the issue is not presently before this court. That being said, we are of the opinion that traditional remedies more than adequately protect the "non-spoiling" party when the "spoiling" party is a party to the underlying action. *See Sebelin v. Yamaha Motor Corporation et al.*, 705 A.2d 904 (Pa.Super.1998) (discussing remedies and sanctions available for one party's spoliation of evidence). *See also Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir.1994) (same).

■ In situations such as the present case, however, the aforementioned traditional rem-

---

**2.** Our court has twice been asked to consider whether Pennsylvania recognizes a cause of action for spoliation of evidence but twice declined to consider the question because of procedural defects. *See Kelly v. St. Mary Hospital*, 694 A.2d 355 (Pa.Super.1997); *Olson v. Grutza*, 428 Pa.Super. 378, 631 A.2d 191 (1993). In *Kelly*, plaintiff was seriously injured when her hospital bed guardrail struck her on the wrist. Plaintiff brought a negligence claim against the hospital and a products liability claim against the bed manufacturer. The hospital subsequently discarded the bed. Thereafter, plaintiff brought a separate action against the hospital for failing to preserve the bed. The trial court dismissed this action. This court found that because plaintiff failed to plead damages and because the absence of the bed was not fatal to her action against either of her actions against the manufacturer, that her complaint failed to state a claim. In *Olson*, we declined to address appellant's spoliation argument, since the claim was unrelated to

appellant's underlying negligence cause of action.

**3.** Additionally, a few Pennsylvania Courts of Common Pleas have embraced spoliation of evidence as a separate cause of action. *See Gicking v. Joyce International, Inc.*, (Leb.Co.1996); *M.L. v. University of Pittsburgh*, 26 D & C 4th 106 (Alleg.Co.1995); *Taylor v. Johnson Products Co., Inc.*, 115 Dauph. 398 (1995); *Leibig v. Consolidated Rail Corp.*, 31 Leb. Co. L.J. 188 (1994). However, many other trial courts have refused to recognize a separate spoliation tort. *See Urban v. Dollar Bank*, No. GD94–8935 (Pa.C.P.Alleg.Co.10.23.96); *Hough v. Knickerbocker Russell Co.*, No. GD95–2892 (Pa.C.P.Alleg.Co.10.23.96); *Greene v. St. Mary Hospital*, No. 94000236–15–2 (Pa.C.P. Bucks Co. 7.10.95); *Rhoads v. Pottsville Hospital*, 92 Sch. L.R. 4 (1995); *Johnson v. Patel*, 19 D & C 4th 305 (Lack.Co.1993).

edies would be unavailing, since the spoliator is not a party to the underlying litigation. Nonetheless, we do not find it necessary to create an entirely new and separate cause of action for a third party's negligent spoliation of evidence because traditional negligence principles are available and adequate remedies exist under those principles to redress the negligent destruction of potential evidence. *See generally Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185 (1995). *See also Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 436 (Minn.1990) ("an action for negligent spoliation could be stated under existing negligence law without creating a new tort.").

▪ In order to sustain a viable cause of action in negligence, the pleader must aver in his complaint the following elements:

1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
2. A failure on the person's part to conform to the standard required: a breach of the duty.
3. A reasonably close causal connection between the conduct and the resulting injury.
4. Actual loss or damage resulting to the interest of another.

Prosser & Keeton on Torts, § 30 (5th ed.1984). *See J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.*, 692 A.2d 582 (Pa.Super.1997) (the elements for a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and an actual loss); *Reilly v. Tiergarten, Inc.*, 430 Pa.Super. 10, 633 A.2d 208 (1993) (same); *Casey v. Geiger*, 346 Pa.Super. 279, 499 A.2d 606 (1985) (same).

▪ With respect to a claim that an actor negligently failed to preserve evidence the key question is whether a third party, i.e., one who is not involved in the underlying litigation, owes a duty to one of the parties in the underlying litigation to preserve evidence relevant to that underlying litigation. "In order to hold a defendant liable for injuries sustained by a plaintiff, it must be shown that the defendant breached a duty of obligation **recognized by the law** which required him to conform to a certain standard of conduct for protection of persons such as the plaintiff." *Brandjord v. Hopper*, 455 Pa.Super. 426, 430, 688 A.2d 721, 723 (1997) (emphasis added and citation omitted). "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." *Id.* (*quoting Cruet v. Certain–Teed Corp.*, 432 Pa.Super. 554, 558, 639 A.2d 478, 479 (1994)).

▪ Generally, the law does not impose affirmative duties absent the existence of some special relationship, be it contractual or otherwise. *See Brandjord, supra*; *Schmoyer v. Mexico Forge, Inc.*, 437 Pa.Super. 159, 649 A.2d 705 (1994). *See also Boyd v. Travelers Insurance Co.*, 166 Ill.2d 188, 209 Ill. Dec. 727, 652 N.E.2d 267 (1995) (although there is no general duty to preserve evidence, such a duty can arise through an agreement, contract, statute, or other special circumstance where one voluntarily assumes a duty by affirmative conduct); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987) (same).

In the present case Elias concedes that Hospital was not contractually obligated to preserve his pacemaker's lead wires. Nor did Hospital agree to secure the lead wires for Elias. *Cf. Pirocchi v. Liberty Mutual Insurance Co.*, 365 F.Supp. 277 (E.D.Pa. 1973) (worker's compensation carrier assumed duty to preserve a chair that caused employee's injuries). Rather, Elias contends that Hospital is charged with a general duty to preserve for inspection any foreign objects removed from its patients' bodies due to its relationship with its patients. In support of this contention Elias claims that absent the imposition of such a duty "health care providers could fabricate phoney [sic] foreign objects that impeded their operations, in order to cover up malpractice, without ever having to produce the objects. In addition, as here, objects removed from a patient's body may

be indispensable to prove a products liability case against a manufacturer."

Although not directly analogous to the present case, our supreme court's decision in *Stupka v. Peoples Cab Company,* 437 Pa. 509, 264 A.2d 373 (1970), is instructive. In *Stupka,* our supreme court was faced with the question of whether a cab company owed a duty to its passengers to obtain sufficient information about individuals involved in traffic accidents with cabs to enable the cab passengers to bring suit. In refusing to create such a duty, the supreme court first explained that the primary duty that a cab company owes to its passengers is to ensure their physical safety and well-being. The court made clear, however, that a cab company had no duty to protect a passenger's financial interests. The court explained, "[a]n individual's financial interests can be so complex and varied that we should not require the carrier to be cognizant of them and responsible for furthering them." *Id.* at 513, 264 A.2d at 374.

We agree with the reasoning espoused in *Stupka.* In the absence of some statutory or contractual duty, we cannot place the added burden on hospitals of protecting patient's financial interests when hospitals are already charged with the vital burden of dispensing healthcare. *Id. See also O'Connell v. Killington, Ltd.,* 164 Vt. 73, 665 A.2d 39 (1995) (ski resort does not owe a duty to injured skiers to obtain identity of other skier involved in the accident, because a third party owes no duty to protect an injured person's economic interests; main concern of ski patrol is to give emergency medical assistance and remove injured skier from mountain). Hospitals are in the business of providing health care; they are not in the business of warehousing artificial items extracted from their patients' bodies. Indeed, hospitals primary duty is to protect the health and welfare of patients in their care. *See generally Thompson v. Nason Hospital,* 527 Pa. 330,

591 A.2d 703 (1991). If we were to require hospitals to save these extracted objects, however, we might very well be compromising the hospital's ability to dispense quality healthcare, since surgeons and their staff involved in procedures where extraction of objects are undertaken will have to ensure that the extracted object is secure **while performing the procedure.**[4] We simply cannot, in good conscience, sanction such a risk.[5]

We find, therefore, that hospitals do not owe a general duty to their patients to preserve foreign objects extracted from their bodies. Whether in the appropriate circumstance a third party can be liable to another for discarding evidence remains to be seen. We find only that under the present facts as they are averred Elias has presented no viable cause of action. The trial court, therefore, correctly sustained hospital's preliminary objections. *Powell, supra.*

Order affirmed.

POPOVICH, J., concurs in the result.

---

4. Moreover, if we extrapolated Elias argument to its logical conclusion, hospitals would be required to preserve not only foreign objects but all medical waste, since this, too, could be evidence in malpractice actions against the surgeon performing the procedure.

5. We also point out that even if we were to charge a hospital with preserving objects extracted from its patients' bodies (which we are loathe to do) it is clear that such duty would not continue indefinitely. Here, Elias did not request that the hospital produce the wires until two years after his operation.