**Faustina OPOKU, et al.**

v.

**CITY OF PHILADELPHIA, et al.**

**Civil Action No. 00–5792.**

United States District Court, E.D. Pennsylvania.

July 2, 2001.

Jack M. Bernard, Philadelphia, PA, for plaintiffs.

Edward D. Chew, Jr., Deputy City Solicitor City Law Dept., Philadelphia, PA, for defendants.

*MEMORANDUM*

BARTLE, District Judge.

This is a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff Faustina Opoku has filed suit on behalf of herself, her minor children, and the estate of her husband, Stephen a/k/a Kwado Opoku ("Opoku"). Plaintiffs assert that the City of Philadelphia (the "City") and Police Officer Gerald Morris ("Morris") violated the constitutional rights of Stephen Opoku by failing to take proper and adequate measures during an attempt to rescue him from a burning automobile. They also allege wrongful death and survival actions under state law. Before the court is defendants' "omnibus dispositive motion" for judgment on all counts.

## I.

Defendants have included for our consideration matters outside the pleadings. We therefore treat the dispositive motion as one for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b). Under Local Civil Rule 7.1(c), a party opposing a motion for summary judgment is required to "serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief." If the party fails to file and serve a timely response, summary judgment shall be entered against the non-compliant party "if appropriate," that is, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(e); Fed.R.Civ.P. 56(c). *See* Local Rule 7.1(c).

In this case, defendants' motion was filed and served on June 7, 2001. Plaintiffs have not responded. Because the City and defendant Morris do not have the burden of proof on any of the issues presented by plaintiffs' complaint, summary judgment is "appropriate" if we "determine that the deficiencies in [plaintiffs'] evidence designated in or in connection with the motion entitle [defendants'] to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990).

## II.

The following facts are undisputed. On November 14, 1998, Stephen Opoku lost control of his car and collided with a tree. Officer Morris, on duty at the time, witnessed the accident from his police vehicle. When he arrived at the scene on foot, Morris reported by police radio that Opoku was injured and trapped in the car. Following his initial attempt to extricate Opoku, Morris reported that the car was on fire and emergency rescue services were required. While police vehicles are usually equipped with fire extinguishers, Morris' jeep did not have one. He sought alternative ways to open the damaged car's doors or windows during which time the fire spread rapidly throughout the interior. Eventually, after all other attempts at entry proved unsuccessful, Morris fired his service weapon into the passenger-side front window towards the glove compartment. Neither the sound of the gunshot nor the shattering glass aroused Opoku, who had demonstrated no signs of consciousness since Morris arrived. Although the broken window enabled Morris to reach Opoku, the fire had become too intense, and Morris was forced to retreat from the burning car. According to the investigation conducted by the Philadelphia Medical Examiner, Opoku died of thermal injuries from the fire with a lacer-

ation of the liver as a secondary contributing cause of death.

On February 1, 1999, the damaged vehicle was released to the Philadelphia police impound lot. The next day, a "Notice of Impounded Vehicle" was sent to Stephen Opoku's address. The notice stated that if the car remained "unclaimed after fifteen (15) days from the written release notification, the Philadelphia Police Department will petition the Court of Common Pleas to sell the vehicle at public auction." On February 3, 1999, the release notification, captioned "Notice of Impounded Vehicle Subject to Sale," was sent to Opoku's address. It specifically stated that an auction would take place on March 9, 1999 at 1:00 p.m. The notice provided a phone number if the interested party had any questions and outlined the right to an administrative hearing. On March 17, 1999, the car was removed from the impound lot by a salvor.

On January 27, 1999, a lawyer representing Faustina Opoku had sent a letter to the City pursuant to 42 Pa.Cons.Stat. Ann. § 5522(a) providing information about Opoku's death.[1] The letter did not mention the automobile or indicate its importance to the proposed lawsuit. Months later, on April 5, 1999, a different attorney from the same firm, purporting to represent Opoku's estate, requested information regarding the location of the car and noted the expectation that the vehicle would be preserved. By that time, however, the car was no longer under the City's control.

### III.

Plaintiffs allege that Morris deliberately placed Opoku "at risk of injury by intentionally discharging his weapon into the automobile ... [and] by failing to take appropriate emergency procedures to extinguish the fire." Compl. ¶ 17. They assert that Morris exhibited "deliberate indifference and reckless disregard for decedent's life by shooting his weapon at the automobile instead of using a less dangerous means to gain access." *Id.* Plaintiffs contend that the City failed properly and adequately to train and equip its police officers for emergency rescue of individuals trapped in a damaged car. Compl. ¶ 18. By these actions, defendants allegedly have "willfully disregarded" Opoku's substantive due process rights as secured by the Fourteenth Amendment.

---

1. Section 5522(a) provides:
   (a) Notice prerequisite to action against government unit—
   (1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person ... shall file in the office of the government unit, ... a statement in writing, signed by or in his behalf, setting forth:
   (i) The name and residence address of the person to whom the cause of action has accrued.
   (ii) The name and residence address of the person injured.
   (iii) The date and hour of the accident.
   (iv) The approximate location where the accident occurred.
   (v) The name and residence or office address of any attending physician.
   (2) If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon within this Commonwealth or elsewhere. The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement.

**812**

■ After reviewing the record before us, the "deficiencies in [plaintiffs'] evidence" are too great to avoid summary judgment in favor of the defendants. *Anchorage Assocs.*, 922 F.2d at 175. With respect to the constitutional claim against Morris, there is no evidence before us that he acted with a degree of culpability sufficient to sustain a substantive due process cause of action. In *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Supreme Court held that the demanding standard of "shocks the conscience" is the appropriate test "when unforeseen circumstances demand an officer's instant judgment." [2] *Id.* at 853, 118 S.Ct. 1708. In such cases where an official cannot engage in "repeated reflection, uncomplicated by the pulls of competing obligations ...[,] even precipitate recklessness fails to inch close enough to [the] harmful purpose" required to establish a constitutional violation. *Id.* at 853–54, 118 S.Ct. 1708 (quoting *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rather, the plaintiff must show that the police officer acted "for the very purpose of causing harm." *Id.* at 853, 118 S.Ct. 1708 (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

Clearly, the facts confronting Morris in this case required an quick thinking and an immediate response. While he may have acted negligently in firing his weapon into the car, there is nothing to suggest that Morris acted with the intent to injure Opoku. Morris did nothing that can "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." [3] *Id.* at 847, 118 S.Ct. 1708 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). On the contrary, the record shows that Morris acted with obvious concern for the welfare of Opoku. Faced with a dangerous situation requiring immediate action, Morris made multiple attempts to rescue Opoku at great risk to his own safety. Only then, recognizing that every second was critical, did he use his gun. Given the damage to the automobile, the inability of Opoku to aid in his own escape, and the speed at which the fire advanced,

---

**2.** The issue confronting the Court in *Lewis* was whether a police officer who demonstrates deliberate or reckless indifference to life in a high-speed automobile chase violates the substantive component of the due process clause. *Lewis*, 523 U.S. at 836, 118 S.Ct. 1708.

**3.** Of course, in some cases, behavior that shocks the conscience is the result of "something more than negligence but 'less than intentional conduct.'" *Lewis*, 523 U.S. at 849, 118 S.Ct. 1708 (quotation omitted). For example, despite the "well-established principle that the Due Process Clause does not impose an affirmative duty upon the state to protect its citizens," *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1368–69 (3d Cir.1992) (in banc), a plaintiff who has been taken into custody and held against his will need not demonstrate that his injuries were caused by a state actor's intent to harm. *See Lewis*, 523 U.S. at 849–

50, 118 S.Ct. 1708; *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Proof that he was deliberately indifferent or grossly negligent may be sufficient to satisfy the fault requirement. *See id.* at 198–99, 109 S.Ct. 998 (citations omitted). Our Court of Appeals has also recognized if an officer uses his "authority to create an opportunity that otherwise would not have existed for the [harm] to occur" and willfully disregards plaintiff's safety, then he too may be liable for violating substantive due process rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir.1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.1995)). In the instant case, however, there are no facts to support a "special relationship" or "state-created danger" theory. The lesser degrees of fault required to sustain a due process claim under those circumstances, therefore, are not applicable here.

Morris simply was unable to prevent the tragedy that ultimately occurred.

Significantly, there is no evidence that Opoku survived the collision with the tree. The record shows that Opoku remained motionless and unresponsive from the moment Morris arrived at the scene. If Opoku died at the moment of impact, then clearly nothing Morris did could be construed as a violation of Opoku's constitutional rights. Furthermore, plaintiffs have not shown that Morris did anything that independently caused or aggravated Opoku's injuries. Their allegation that Opoku's liver laceration may have been caused by Morris' bullet is only speculation unsubstantiated by police or medical examiner reports. It is just as likely that the accident caused the purported liver laceration. Similarly, plaintiffs' unsupported averment that Morris' gunshot caused the fire is contradicted by Morris' deposition and the transcript of the police radio communications regarding the incident. In sum, there is no genuine dispute about the fact that Morris acted with the intent of helping Opoku and that his rescue attempts were well-meaning responses to a dire situation.

■ Plaintiffs' failure to present facts in support of their constitutional claim against Morris requires the court to grant the City's motion for summary judgment as well. While it is incontestable that a municipality may by liable under § 1983 for failing to train it police officers, *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the City cannot be liable if its failure to train does not result in an underlying constitutional violation. *Kneipp v. Tedder,* 95 F.3d 1199, 1212 n. 26 (3d Cir.1996) (citing *City of Canton,* 489 U.S. at 388–89 n. 8, 109 S.Ct. 1197; *Collins,* 503 U.S. 115, 123–24, 112 S.Ct. 1061).

■ Furthermore, there is nothing in the record before us to demonstrate that the City sold Opoku's car or disposed of any evidence with the intent to interfere with plaintiffs' lawsuit or violate any constitutional right. *See generally Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994); *Elias v. Lancaster Gen. Hosp.,* 710 A.2d 65, 67 (Pa.Super.1998). While it is true that plaintiffs sent a "notice of claim" letter to the City prior to the public auction of the car, the notice did not identify or refer to the vehicle. Plaintiffs' specific request to preserve the wrecked automobile was mailed weeks after its disposal. It is undisputed that the City sent proper notice to the correct address advising interested parties on the procedure necessary to retrieve the impounded car. Plaintiffs, who knew better than any other party the value of the car to the case, did nothing.

Accordingly, defendants' motion for summary judgment on plaintiffs' § 1983 claims will be granted.

## IV.

Plaintiffs' remaining claims assert wrongful death and survival actions. Having "dismissed all claims over which [this court] has original jurisdiction," we decline to exercise supplemental jurisdiction over these state law causes of action and will dismiss them without prejudice. 28 U.S.C. § 1367(c)(3). *See Hedges v. Musco,* 204 F.3d 109, 122–23 (3d Cir.2000).

## *ORDER*

AND NOW, this 2nd day of July, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) Summary judgment is entered in favor of defendants City of Philadelphia and Gerald Morris and against plaintiffs on

Count I and Count II of the complaint; and

(2) plaintiffs' wrongful death and survival claims under state law are dismissed without prejudice. *See* 28 U.S.C. 1367(c).