J-A22040-22

2022 PA Super 207

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE A/S/O BATES COLLISION, INC., JAMES MYERS, ANITA MORGAN, LOSSIE AUTO SERVICE, AND BENEDICTINE SISTERS OF ERIE, INC. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : : : | No. 1482 WDA 2021 |
| UNITED SERVICES AUTOMOBILE ASSOCIATION | : : : : : | |
| v. | : : : | |
| BATES COLLISION, INC. | : | |

Appeal from the Judgment Entered November 12, 2021
In the Court of Common Pleas of Erie County Civil Division at No(s): No. 12888-18

BEFORE: OLSON, J., DUBOW, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED: December 6, 2022**

Appellant, Erie Insurance Exchange (Plaintiff), as subrogee of its insured, Bates Collision, Inc. (Bates Collision), and four other of its insureds, appeals from an order of the Court of Common Pleas of Erie County (trial court) granting summary judgment for defendant United Services Automobile Association (Defendant) in an action that Plaintiff brought against Defendant

---

[*] Retired Senior Judge assigned to the Superior Court.

for damages from loss of evidence in a fire investigation. For the reasons set forth below, we affirm.

On January 22, 2017, a fire occurred at Bates Collision's automotive collision repair shop in Wesleyville, Erie County, Pennsylvania, damaging the building and the 16 vehicles that were in the building. Pennsylvania State Police Fire Marshal Report. One of the vehicles at Bates Collision at the time of the fire was a 2013 BMW 3 Series 335i owned by Robert Bailey and insured by Defendant (the BMW vehicle). *Id.*; Complaint ¶¶3-4; Answer ¶¶3-4. The BMW vehicle was being repaired by Bates Collision following a collision with a deer and was the only vehicle in the building that sustained burn damage in the fire; the other vehicles sustained only smoke damage or smoke damage and damage from falling debris. Pennsylvania State Police Fire Marshal Report. Four of the other vehicles that were in the building were owned by James Myers, Anita Morgan, Lossie Auto Service, and Benedictine Sisters of Erie, Inc. and were also insured by Plaintiff. Plaintiff paid Bates Collision $1,587,000.10 for losses from the fire under two policies of insurance and paid its other four insureds a total of $35,317.05 for the damage to their vehicles.

Following its initial investigation, Plaintiff concluded that the fire may have been caused by the BMW vehicle and, on January 26, 2017, put BMW of North America (BMW) on notice of a potential claim. 1/26/17 Letter from Plaintiff's Attorney to BMW. On February 7, 2017, Plaintiff scheduled a joint

inspection of the fire scene for February 22, 2017 and experts for Plaintiff, BMW, and Defendant inspected the fire scene on that date. 2/7/17 Letter from Plaintiff's Attorney; Complaint ¶14; Answer ¶14; Breneman Dep. 37, 92-94. In the letter scheduling the joint inspection and a follow-up email on February 15, 2017 confirming the joint inspection, both of which were sent to Defendant and BMW, Plaintiff's attorney's office stated that "[a]fter the inspection, USAA [Defendant] will retain the BMW for possible future examination." 2/7/17 Letter from Plaintiff's Attorney; 2/15/17 email from Plaintiff's Attorney's office. After the joint inspection, Defendant's expert advised Defendant that the BMW vehicle needed to be wrapped and held for future examination and Defendant had the BMW vehicle towed to Insurance Auto Auction (IAA). Breneman Dep. 102, 118; Jurado Dep. 121; 2/23/17 Letter from Jurado to Plaintiff's Attorney.

On February 23, 2017, Plaintiff emailed a letter to Defendant and its expert stating:

> This will confirm that USAA [Defendant] took possession of the BMW and will have it wrapped, secured and preserved for possible future examinations.
> Please provide the storage location for the BMW.
> We may want to conduct a future invasive examination of the vehicle and/or its components. Please make sure the car is preserved in its current condition and is not in any way altered or disturbed.

2/23/17 Letter from Plaintiff's Attorney to Defendant and Defendant's Expert. Defendant responded the same day by a letter stating:

> Please be advised, the 2013 BMW 335XI 4D 4X4 is located at:

Insurance Auto Auction
49 Bairdford Rd
Gibsonia, PA 15044
724-443-7881
Stock number: 19311412
We have requested that the vehicle be wrapped and preserved for potential additional investigation.

2/23/17 Letter from Jurado to Plaintiff's Attorney.

Plaintiff contacted Defendant and BMW on April 25, 2017 scheduling a invasive examination of the BMW vehicle for June 30, 2017. 4/25/17 Letter from Plaintiff's Attorney to Defendant and BMW. IAA, however, had sold the BMW vehicle at a salvage auction on March 28, 2017. Heffley Dep. 36. The BMW vehicle was sold by IAA because Defendant had not sufficiently communicated to IAA the need for IAA to put a "hold" on the BMW vehicle. Jurado Dep. 141, 165, 168; Lowry Dep. 55-56.

On November 9, 2018, Plaintiff filed this action against Defendant, alleging that Defendant's failure to preserve the BMW vehicle caused it to lose the ability to pursue a subrogation claim "against the manufacturer or the owner of the vehicle or anyone involved in maintaining the vehicle" and seeking damages of $1,624,217.15 (the $1,622,317.15 that it paid its insureds plus its insureds' deductibles) on a theory of promissory estoppel. Complaint ¶¶9-11, 15-26 & *ad damnum* clause. Defendant in its answer to Plaintiff's complaint asserted, *inter alia*, that any damages from inability to pursue a claim for the fire losses were speculative and that Plaintiff had no cause of action for loss of the BMW vehicle. Answer ¶¶30-33, 36. On January

14, 2019, Defendant joined Bates Collision as an additional defendant, alleging that if the fire originated in the BMW vehicle, it was caused by Bates Collision's negligence in storing and repairing the BMW vehicle. Docket Entries at 3; Complaint Against Additional Defendant ¶¶17-26; Amended Complaint Against Additional Defendant ¶¶17-26.

Following discovery, Plaintiff and Defendant filed cross-motions for summary judgment. In support of their summary judgment filings, both parties filed deposition transcripts and documents concerning their communications and the loss of the BMW vehicle and also filed affidavits and certifications of experts concerning the cause of the fire. Plaintiff's expert opined that the fire originated in the engine compartment of the BMW vehicle in the area of the power steering unit and stated that based on his preliminary investigation, he believed that the fire "was likely caused" by insufficient welding of electrical contact pins in the power steering unit, which had been the subject of a BMW recall of different models manufactured in different years than the BMW vehicle. Adams Certification ¶¶12-16 & Ex.5. Plaintiff's expert stated, however, that he could not determine that this defect existed or caused the fire without an invasive examination in which he could examine the electrical contacts in the power steering unit for looseness and arcing and that the failure to preserve the BMW vehicle prevented him from conducted that examination. *Id.* ¶¶17-20. Defendant's expert did not dispute that the fire originated in the BMW vehicle's engine compartment in the area of the power

steering unit, but opined that any defect in the power steering unit was not a manufacturing defect, but was more likely caused by damage to the BMW vehicle in the accident or the damaged condition of a recycled power steering unit that Bates Collision used to repair the BMW vehicle, which was from a 2014 vehicle that had been damaged in an accident. Mazza Affidavit ¶¶6-7, 13, 22-30, 34.  Defendant's expert further opined that the fire was caused by Bates Collision's negligence in leaving the BMW vehicle's battery energized while the BMW vehicle was in its shop for repairs.  *Id.* ¶¶8-9, 11, 35-36.

On November 12, 2021, the trial court denied Plaintiff's motion for summary judgment, granted Defendant's cross-motion for summary judgment, and directed that judgment be entered in favor of Defendant and against Plaintiff.  Trial Court Order, 11/12/21.  The trial court concluded that Plaintiff's claim was barred by *Pyeritz v. Commonwealth*, 32 A.3d 687 (Pa. 2011), in which our Supreme Court held that Pennsylvania does not recognize a cause of action for damages for negligent spoliation of evidence.  Trial Court Opinion, 11/12/21, at 12-16; Trial Court Opinion, 2/8/22, at 6-12, 22-29. The trial court also held that Plaintiff's evidence did not satisfy the elements of promissory estoppel cause of action and that Plaintiff had no subrogation cause of action against Defendant because Defendant did not cause the fire that damaged Plaintiffs' insureds' building and vehicles.  Trial Court Opinion,

11/12/21, at 14-16; Trial Court Opinion, 2/8/22, at 12-29. This timely appeal followed.[1]

Plaintiff argues that the trial court erred in granting summary judgment on the following grounds: 1) Plaintiff contends that **Pyeritz** does not bar a claim for spoliation brought on a theory of promissory estoppel and 2) it contends that the evidence was sufficient to satisfy the elements of a cause of action for promissory estoppel. Appellant's Brief at 3-4. Our standard of

_____

[1] Although it does not appear that the trial court made any express ruling concerning the claims against Bates Collision as an additional defendant, we conclude that its order disposed of all claims and parties and is therefore an appealable final order for two reasons. First, the trial court in fact dismissed the claims against Bates Collision by stating that its order concluded the litigation. Trial Court Order, 11/12/21 (ordering that the "Prothonotary of Erie County is to enter judgment in favor of Defendant United Services Automobile Association and against Erie Insurance Exchange thereby concluding this litigation; no award to Defendant USAA for damages or counsel fees"). Second, even if the order did not dismiss the claims against Bates Collision, it would still be final because the only claims that could exist in this action against Bates Collision are claims by Defendant for contribution and indemnity. While Defendant's complaint joining Bates Collision pled sole liability to Plaintiff in addition to asserting claims that Bates Collision was liable to Defendant for contribution or indemnity, Complaint Against Additional Defendant ¶¶25-26; Amended Complaint Against Additional Defendant ¶¶25-26, neither party contends that Plaintiff could have a cause of action against Bates Collision. Moreover, Plaintiff as a matter of law cannot have a cause of action against Bates Collision because Plaintiff is suing Defendant as subrogee of its insureds and Bates Collision is Plaintiff's insured. **Joella v. Cole**, 221 A.3d 674, 677 (Pa. Super. 2019) (a party suing as subrogee cannot recover damages from its own insured). Where the defendant's claim against an additional defendant is limited to contribution or indemnity if that defendant is held liable to the plaintiff and the court has determined that the defendant is not liable, the claim against the additional defendant is moot and does not prevent the dismissal of all other claims from being a final order. **Oliver v. Ball**, 136 A.3d 162, 166 n.2 (Pa. Super. 2016).

review of the trial court's grant of summary judgment is *de novo* and our scope of review is plenary. *Pyeritz*, 32 A.3d at 692; *American Southern Insurance Co. v. Halbert*, 203 A.3d 223, 226 (Pa. Super. 2019). We conclude that the trial court correctly held that *Pyeritz* bars Plaintiff's claim and therefore do not reach the issue of whether Plaintiff satisfied the elements of a claim for promissory estoppel.[2]

In its seminal decision in *Pyeritz*, our Supreme Court considered the question whether Pennsylvania recognizes a cause of action against a third party not otherwise liable to the plaintiff for damages caused by the third party's negligent spoliation of evidence and held that "Pennsylvania law does not recognize a cause of action for negligent spoliation of evidence." 32 A.3d at 689, 691, 695. That case, like this action, involved a request to preserve

---

[2] Plaintiff lists four other issues in this appeal, Appellant's Brief at 4-5. Three of those other issues are not separate issues at all. Two of those issues, concerning burdens and practices in insurance investigations and public policy, are arguments as to why *Pyeritz* should not apply to Plaintiff's claim. The issue of whether the trial court failed to consider the evidence in the light most favorable to Plaintiff is a necessary part of the issue of whether the trial court erred in holding that Plaintiff's evidence on the summary judgment motions was insufficient to satisfy the elements of promissory estoppel. With respect to the remaining additional issue listed by Plaintiff, whether the trial court erred in holding that Plaintiff lacking standing to pursue a subrogation claim against Defendant, Plaintiff concedes that its subrogation rights in this action are its rights to assert a claim for the damages suffered by its insureds and that its only claim against Defendant is for promissory estoppel, not subrogation. Appellant's Brief at 45-46. This issue therefore cannot constitute a basis that could support a cause of action against Defendant if *Pyeritz* bars Plaintiff's promissory estoppel claim or if the elements of a cause of action for promissory estoppel are not satisfied.

evidence, disposal of the evidence after a representation that the evidence would be retained, and a claim for damages for the loss of recovery in a tort case that depended on the evidence that was destroyed.

In *Pyeritz* the plaintiffs were the estate and family of a decedent who had fallen to his death from a hunting tree stand when the belt that lashed him to the tree stand broke. 32 A.3d at 689. Following decedent's death, the Pennsylvania State Police took possession of the pieces of the tree stand belt and less than a month later, an attorney for the plaintiffs sent the trooper in charge of the investigation a letter stating that the attorney might want the trooper to retain the tree stand belt "[b]ecause of the extreme need to see that there is no spoliation of this evidence." *Id.* at 689-90. The trooper advised the plaintiffs' counsel that the State Police would have to retain the pieces of the belt until a coroner's jury determination of the cause and manner of death. *Id.* at 690. While the belt pieces were in the State Police's possession prior to the coroner's jury proceeding, plaintiff's counsel and a representative of a tree stand belt manufacturer took photographs of the belt pieces. *Id.* Less than a month after the coroner's jury determination that decedent's death was accidental, the plaintiffs' attorney asked the trooper to keep the pieces of the belt in the evidence room at the State Police barracks and the trooper agreed to the request. *Id.* The barracks, however, were later relocated to a new building and the trooper who had agreed to retain the pieces of the belt was assigned to a different barracks. *Id.* One month after

the barracks were relocated, the trooper to whom the case was reassigned destroyed the pieces of the belt because the investigation had been completed. *Id.*

The *Pyeritz* plaintiffs brought a product liability action against two tree stand belt manufacturers, which settled for $200,000, and brought a negligence action against the State Police for failing to preserve the belt, seeking as damages the loss of a greater award or settlement that the plaintiffs contended that they could have obtained if the belt pieces had not been destroyed. 32 A.3d at 690-91. The trial court granted summary judgment, the Commonwealth Court affirmed, and the Supreme Court granted allowance of appeal on the issue of "[w]hether Pennsylvania recognizes, and if so whether Petitioners have alleged, a cause of action for negligent spoliation of evidence[.]" *Id.* at 691.

The Supreme Court rejected this cause of action on the ground that a gratuitous agreement to a request to indefinitely retain evidence is not a sufficient basis to impose a legal duty and on the ground that recognition of the cause of action was against public policy because there is no way of knowing whether the evidence, if it been preserved, would support or negate the claim for which the damages are sought and the damages in such an action are therefore speculative. 32 A.3d at 693. With respect to the latter ground for rejecting a spoliation cause of action, the Court reasoned:

> Although it may have been reasonably foreseeable to the troopers
> that the loss of the evidence might harm Appellants in their quest

- 10 -

for damages in a civil lawsuit against the belt's manufacturer, we hold that as a matter of public policy, this is not a harm against which Appellees should be responsible to protect. The primary reason is that the tort would allow the imposition of liability where, **due to the absence of the evidence, it is impossible to say whether the underlying litigation would have been successful**. It could very well be true in this case, for example, that if the belt had not been destroyed, it would have undermined Appellants' suit against the manufacturers and they would not have realized even the $200,000 settlement they now have in hand. Of course, in some cases, one party may have already finished testing the evidence by the time it is destroyed, or as here, photographs or other representations of the evidence may still exist. However, depictions are an inadequate substitute for the evidence itself, as other parties cannot inspect and test the evidence independently, which deprives them of the raw material they need to mount a potentially successful claim or defense. If we were to recognize the tort, **the inability of the parties to assess meaningfully the impact of the missing evidence on the underlying litigation would result in potential liability based on speculation**.

*Id.* at 693-94 (emphasis added).

Although the Supreme Court in *Pyeritz* discussed a tort cause of action and analyzed the elements of negligence, it held that no cause of action for negligent spoliation (as opposed to intentional spoliation) exists, not that no tort action for such spoliation (as opposed to a non-tort cause of action) exists. Nothing in the opinion suggests that mere changing of the label on the claim to promissory estoppel would alter the result. To the contrary, the speculative nature of the damages that the Court held required rejection of the cause of action is the same regardless of the theory of liability. Moreover, the Court considered the existence of a gratuitous agreement relied on by the plaintiff in rejecting the cause of action and specifically rejected this Court's language

in **Elias v. Lancaster General Hospital**, 710 A.2d 65, 68 (Pa. Super. 1998) that a special relationship, such as an agreement or voluntary assumption of a duty to preserve the evidence, could support liability for negligent spoliation. 32 A.3d at 693-94. In addition, the Supreme Court rejected the **Pyeritz** plaintiffs' alternative claim that the State Police were liable for spoliation of the evidence on a theory of breach of an implied contract for bailment, regardless of whether such a bailment was shown, on the ground that the damages sought were for negligent spoliation of evidence. **Id.** at 691 n.2; **see also id.** at 695 (Eakin, J., concurring).

The factors on which the Supreme Court relied in rejecting a spoliation cause of action are equally present in Plaintiff's promissory estoppel cause of action in this case. The basis of Plaintiff's claim, as in **Pyeritz**, is a gratuitous indefinite commitment to preserve an item of evidentiary value for the benefit of the requesting party. Plaintiff's claim is for the same type of damages, loss of recovery in a lawsuit in which the spoliated item was critical evidence, and has the identical speculative nature that caused the Supreme Court to reject the spoliation cause of action in **Pyeritz** – there is no way to tell whether further examination of the BMW vehicle would support or refute the claim of manufacturing defect. Indeed, Plaintiff brought no action against BMW and Plaintiff conceded to the trial court that it could not show that the fire was caused by a manufacturing defect or by any condition of the BMW vehicle for which it could have recovered damages. N.T. Summary Judgment Argument

at 9, 29-31, 41. This case, like **Pyeritz**, also involves negligent spoliation. The loss of the evidence was the result of a failure by Defendant to adequately communicate to IAA, the party that disposed of the BMW vehicle, that it needed to hold the BMW vehicle, not an intentional destruction or disposal of the BMW vehicle by Defendant.

Although no Pennsylvania case has specifically addressed whether **Pyeritz** bars or permits a non-tort claim for damages caused by negligent spoliation of evidence, Pennsylvania federal cases have characterized **Pyeritz** as broadly holding that no cause of action for damages for negligent spoliation exists under Pennsylvania law without limiting this statement to tort liability. **Schwartz v. Taylor**, 2021 WL 949481 at *3 (E.D.Pa. C.A. No. 17-3799 March 11, 2021); **Marinkovic v. Battaglia**, 2019 WL 4600207 at *13-*14 (W.D.Pa. Cases Nos. 1:14-cv-49, 2:18-cv-388 September 23, 2019); **Turturro v. United States**, 43 F. Supp. 3d 434, 459-60 (E.D. Pa. 2014), **aff'd**, 629 Fed. Appx. 313 (3d Cir. 2015).[3]

---

[3] One very recent Pennsylvania federal district court opinion, **Atlantic States Insurance Co. v. Copart, Inc.**, 2022 WL 3722081 (E.D.Pa. No. 5:22-cv-1177 August 29, 2022), addressed a promissory estoppel claim for spoliation and held that the facts alleged by the plaintiff were insufficient to satisfy the elements of promissory estoppel, but did not consider whether **Pyeritz** bars such a claim. Slip op. at *5. This opinion not only does not decide the issue before us, but any implication from its consideration of the promissory estoppel claim on the merits that **Pyeritz** permits such a cause of action would have no persuasive value, as the **Atlantic States Insurance Co.** court's analysis of the negligence claim plainly disregarded **Pyeritz** by holding that a negligent spoliation claim based on a special relationship and assumed duty

Plaintiff argues that this Court should follow a California decision, ***Cooper v. State Farm Mutual Automobile Insurance Co.***, 99 Cal.Rptr.3d 870 (Cal. App. 2009), that allowed a promissory estoppel cause of action for spoliation, that ***Pyeritz*** is distinguishable, and that public policy considerations require recognition of its promissory estoppel cause of action. None of these arguments has merit.

In ***Cooper***, the California court held that the plaintiff injured in an automobile accident that he contended was caused by a defective tire could recover damages from his insurer on a promissory estoppel theory where the insurer disposed of the tire despite representations that it would preserve the tire. 99 Cal.Rptr.3d at 873, 882-92. ***Cooper***, however, not only is not based on Pennsylvania law, but its reasoning is not consistent with ***Pyeritz*** and it involved a situation where the damages were not as speculative as here. In ***Cooper***, the court allowed the promissory estoppel cause of action for spoliation based on the fact that the insurer assumed a duty and had a special relationship with the plaintiff as a result of its promises to preserve the tire. 99 Cal.Rptr.3d at 882-85, 892. ***Pyeritz*** specifically rejected both assumed duty by gratuitous promises to retain evidence and a special relationship between the parties as bases for liability for spoliation. 32 A.3d at 693-94. In addition, unlike this case, the speculative nature of damages that is the

_____

can exist, slip op. at *3, even though ***Pyeritz*** rejected both of these factors as bases for a negligence claim for spoliation. 32 A.3d at 693-94.

basis for rejecting spoliation suits was substantially reduced in *Cooper*, as there was expert opinion in *Cooper* that there was a manufacturing defect in the tire, 99 Cal.Rptr.3d at 886-87, not the mere possibility that a defect would be found if further examination had occurred.

Plaintiff argues that *Pyeritz* is distinguishable because the claim was against the government and would impose burdens outside the government's function. While *Pyeritz* did involve a government defendant and the Court mentioned that the retaining of evidence for a private civil suit was outside the government function, 32 A.3d at 693, the Court did not limit its rejection of the cause of action to government entities. Rather, the Court rejected the cause of action without regard to the type of defendant, *id.* at 689, 695 & n.7, and discussed the burden on non-government parties as a reason for rejecting the spoliation cause of action, stating:

> To the extent recognition of the tort would encourage the preservation of evidence, that benefit is outweighed by the financial burden the tort would impose. If it were recognized, businesses and institutions would be forced to preserve evidence, at considerable expense, for a myriad of possible claims that might never be brought.

*Id.* at 694.

The public policy considerations that Plaintiff asserts are that practices in the insurance industry allegedly required Defendant to retain the BMW vehicle until the investigation or litigation is complete and that failure to recognize a cause of action will create unnecessary additional litigation and expense. Nothing in the insurance industry practices argued by Plaintiff, which

concern which party routinely holds and preserves evidence, however, negates the key public policy rationale of **Pyeritz** that the damages caused by loss of evidence are too speculative to permit a cause of action. Moreover, denial of a cause of action does not require burdensome litigation to preserve evidence. Other steps to ensure that evidence is in fact preserved, such as payment of storage costs by the party that wishes to retain the evidence, express agreements as to how long evidence is held, and express agreements giving the party that wishes to retain the evidence authority to control its storage and disposal, could achieve protection of evidence without litigation.

Because our Supreme Court clearly held in **Pyeritz** that Pennsylvania does not recognize a cause of action to recover damages caused by negligent spoliation of evidence and Plaintiff's promissory estoppel claim against Defendant is an action to recover damages for negligent spoliation of evidence based on the same kind of a gratuitous agreement to indefinitely preserve evidence for the plaintiff's benefit and speculative damages that the Supreme Court held did not permit a cause of action, the trial court properly held that Plaintiff as a matter of law had no cause of action against Defendant. We therefore affirm the trial court's order granting summary judgment in favor of Defendant and against Plaintiff.

Order affirmed.

Judge Olson joins this Opinion.

Judge Dubow files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022