**Richard CARLOTTI, Individually and as Executor of the Estate of Elaine Carlotti, Appellee,**

v.

**EMPLOYEES OF GENERAL ELECTRIC FEDERAL CREDIT UNION NO. 1161, Appellant.**

**Richard CARLOTTI, Individually and as Executor of the Estate of Elaine Carlotti, Appellant,**

v.

**EMPLOYEES OF GENERAL ELECTRIC FEDERAL CREDIT UNION NO. 1161, Appellee.**

Superior Court of Pennsylvania.

Argued June 4, 1998.

Filed Sept. 4, 1998.

Daniel L. Rivetti, Pittsburgh, for Employees of General Elec. Federal Credit Union No. 1161.

Donald F. Fessler, Jr., Erie, for Richard Carlotti.

Before FORD ELLIOTT, EAKIN and BECK, JJ.

BECK, Judge:

This appeal arises out of a negligence action filed by Richard Carlotti against the Employees of General Electric Federal Credit Union No. 1161 (the "Credit Union"). After a bench trial, the judge found in favor of appellee and awarded damages, plus interest and costs of suit. Post trial motions were denied and this timely appeal followed entry of judgment on the verdict. We reverse.

The following findings of fact by the trial judge are supported by the record. Richard Carlotti has been a member of the Credit Union since 1981, and his wife Elaine was a member from 1986 until the time of her death on April 9, 1995. On March 24, 1995, Richard Carlotti applied for a loan in the amount of $14,500 through the Credit Union; the loan application revealed that Elaine Carlotti's income was necessary to repay the loan and she was identified as a co-maker on the application form. Both Richard and Elaine Carlotti signed a Consumer Credit Disclosure Form, Promissory Note and Security Agreement as "borrower," and these documents obligated both Richard and Elaine Carlotti to repay the loan in installments; the total amount of the repayment was in the amount of $17,741.86.

At the time it made this loan, the Credit Union had secured loan protection insurance from CUNA Mutual Insurance Company, which coverage was provided to members of the Credit Union free of charge. The application for loan protection insurance states that the coverage is provided "in the interest of providing protection for the Credit Union and Members who are eligible for the Insured Class as defined in the said Contract, and their surviving families, against the hardship of outstanding loans and remaining debts." After executing the loan documents, the Carlottis received a Certificate of Insurance from CUNA. The Certificate provides, in part: "You, the insured member of your Credit Union whose account number is identified in this certificate and whose signature appears first on the note as maker of your loan, are the person whose life is insured under this certificate. The lives of any co-makers on your loan are not insured under this certificate." Richard Carlotti's name appeared first on the note, and under the terms of the certificate only he was insured.

Elaine Carlotti died unexpectedly on April 9, 1995. Richard Carlotti made a claim for

benefits under the loan protection plan provided by CUNA through the Credit Union. The claim was denied because Elaine Carlotti was not the insured under the Certificate of Insurance. Richard Carlotti filed this negligence action claiming that the Credit Union breached a duty to inform him and his wife that the free loan protection insurance would apply only to the person who "signed the note first," despite the fact that both were members of the Credit Union and both equally liable under the note and security agreement. The trial judge agreed and ordered payment by the Credit Union to the Estate of Elaine Carlotti of "an amount equal to amount decedent would have been entitled to as an insured member of [the Credit Union], plus interest at the rate of 6% on any and all installment payments not made by [the Credit Union], plus costs of suit." The court expressly held that the Credit Union breached its "affirmative duty to advise a member, prior to the execution of the documents ... that the member would be divested of free insurance coverage under the Group Life Insurance Policy—Loan Protection Plan."

Appellant Credit Union argues on appeal that the court erred in imposing such an "affirmative duty" under the circumstances of this case. The trial judge did not specify how he believed the Credit Union's duty arose. Carlotti argues that the duty arises under one or more of the following: 1) the recognized responsibilities of the Credit Union's loan officers; 2) Restatement (Second) of Torts § 323, Negligent Performance of Undertaking to Render Services; 3) a fiduciary duty to credit union members; 4) a reasonable man standard; 5) common law; 6) the Unfair Trade Practices/Consumer Protection Law, 73 P.S. § 201–1 et seq. Appellant Credit Union claims that there is no basis in the law for a claim of negligence under the facts in this case.

Carlotti points out that the Credit Union's loan officer herself acknowledged that she was responsible for "explaining the loan protection insurance to the members of the Credit Union." Carlotti argues that by taking on this obligation, the Credit Union had the duty to perform the explanation in a non-negligent manner. In essence, Carlotti argues that the Credit Union's duty to inform arises under Section 323 of the Restatement (Second) of Torts, which provides:

**Negligent Performance of Undertaking to Render Services**

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

(Emphasis added). Carlotti argues that, because the Credit Union took on the responsibility of providing loan protection insurance to its members who take out loans, it had the duty to exercise reasonable care in doing so, including properly advising the members about the limitations of the loan protection insurance. The failure to do so, Carlotti claims, proximately caused his damage, *i.e.,* an outstanding debt with no insurance coverage at his wife's death. Carlotti makes this argument despite the fact that he was given a Certificate of Insurance that expressly defined the "insured member" to include just one maker, the one whose signature appeared first.

Clearly, if this were a contract action, Carlotti would not be entitled to relief. The Certificate of Insurance provides the terms of coverage, and any statements made by the Credit Union about the coverage would be parol evidence that would not be admissible to modify the terms of the contract. *Henry v. First Fed. Sav. & Loan Ass'n*, 313 Pa.Super. 128, 459 A.2d 772 (1983). Moreover, Carlotti would have been held to the express terms of the contract, and his admitted failure to read the Certificate would probably not preclude its enforceability. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). The question is whether Carlotti should be able to avoid application of these principles by bringing a negligence action.

■ We have found no precedential case holding that such facts make out a cause of action in negligence. Negligence is proved by evidence of: 1) a duty or standard of care; 2) a breach thereof; 3) proximate causation; 4) actual damages. *Orner v. Mallick*, 515 Pa. 132, 527 A.2d 521 (1987). Nor does Section 323 of the Restatement provide a basis for recovery in this case. The language of the section expressly states that liability will attach for *physical harm* to a person or things resulting from the tortfeasor's failure to exercise reasonable care in performing an undertaking to render services. We have been unable to find any binding decision that would impose a duty under § 323 where the harm alleged is merely financial. Indeed, the existing cases would suggest that economic harm is not a basis for recovery. *See Stupka v. Peoples Cab Co.*, 437 Pa. 509, 264 A.2d 373 (1970) (cab driver did not have affirmative duty to take name of other driver in accident so that plaintiff passenger would have opportunity to file lawsuit for damages; interest in financial well-being is not of sufficient weight to overcome reluctance to impose affirmative duty).[1] We therefore hold that no duty arose under Restatement § 323, and the section could not be the basis for an award in this case.

■ We next consider whether the trial court's award could be based on a fiduciary duty owed by the Credit Union to the Carlottis. Carlotti provided no support for this allegation. We have not found any support for such a proposition in our research, and therefore hold that this claim must fail under the facts of this case.

1. We are aware of federal cases that do impose such a duty under section 323 where the harm alleged is other than physical. *See, e.g., Quinones v. United States*, 492 F.2d 1269 (3d Cir. 1974) (defendant employer breached duty to maintain accurate employment records, thereby resulting in damage to plaintiff's reputation and ability to secure new position). *See also Pirocchi v. Liberty Mutual Insurance Co.*, 365 F.Supp. 277 (E.D.Pa.1973) (defendant insurer took on duty of preserving chair on which plaintiff was injured; summary judgment not appropriate where insurer may have breached that duty and deprived plaintiff of viable products liability action). These cases acknowledged that there was no Pennsylvania precedent to follow in this area. We are not bound by these federal decisions.

■ Carlotti also argued that the common law or a "reasonable man standard" give rise to a duty on the part of the Credit Union here. However, we are directed to no applicable cases that would support this claim. We decline to extend existing negligence law to include the circumstances of this case.

■ Finally, Carlotti argues that the Credit Union's duty to inform arises under the Unfair Trade Practices/Consumer Protection Law ("UTP/CPL"), 73 P.S. § 201–1 *et seq.* Carlotti also argues that the trial court erred in failing to find liability under the substantive provisions of the act. Although the trial judge did not discuss this issue in his opinion, we hold that he correctly denied recovery to Carlotti under the UTP/CPL, and that its provisions do not impose a duty on the Credit Union.

The UTP/CPL authorizes "any person who *purchases or leases* goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as the result of" an unfair or deceptive act or practice to bring a private action for damages. 73 P.S. § 201–9.2(a) (emphasis supplied). An "unfair or deceptive act or practice" is defined, in part, as:

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

\* \* \*

(iv) Using deceptive representations or designations of geographic origin in connection with goods or services;

We are also aware of the dissenting opinion in *Caldwell v. City of Philadelphia*, 358 Pa.Super. 406, 517 A.2d 1296 (1986), wherein Judge Hoffman stated his belief that Pennsylvania cases do provide a right of recovery under § 323 where the injury is purely economic, and relied upon *Pascarella v. Kelley*, 378 Pa. 18, 105 A.2d 70 (1954) for this proposition. The damage in *Pascarella*, however, was physical harm to the plaintiff's building, and is thus covered by the express language of the Restatement section. We are not persuaded that these cases create a duty under § 323. *See also Love v. United States*, 915 F.2d 1242 (9th Cir.1989) (Restatement § 323 is a "good samaritan law" and is not applicable to claims for economic harm where physical safety was not implicated).

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.... [2]

73 P.S. § 201–2. The trial court held that "Plaintiff has not made out a case under the [UTP/CPL]." The court did not explain its decision. However, we agree that there can be no liability under the UTP/CPL in this case. The Carlottis did not "purchase" the loan protection insurance offered gratuitously by the Credit Union, and therefore the claim under the UTP/CPL must fail under the act's express terms. 73 P.S. § 201–9.2.

Because we find that the trial court erred in finding a duty on which to base a cause of action for damages in negligence under the facts of this case, we must reverse the court's order denying appellant Credit Union's motion for post-trial relief. We remand to the trial court for proceedings necessary to vacate the judgment entered in favor of appellees.

Reversed and remanded for further proceedings. Jurisdiction relinquished.

2. These are the specific sections cited to by Carlotti in his claim that the Credit Union violated the UTP/CPL.