## Himmelreich v. Adams Abstract Associates

C.P. of Adams County, no. 92-S-1145.

*Charles I. Himmelreich,* for plaintiffs.
*Mark K. Emery* and *Helen L. Gemmill,* for defendant.

KUHN, *P.J.,* January 24, 2002—Plaintiffs, Mark and Lisa Himmelreich, initiated this action against defendants, Adams Abstract Associates and Penn Title Insurance Company in December 1992. There has been a tortured procedural history which is not particularly pertinent to the issues now before the court. Suffice it to say that plaintiffs filed their fourth amended complaint on December 20, 1999. The complaint had been pared to five counts, specifically, negligence (Count I), fraud (Count II) and violation of the Unfair Trade Practices and Consumer Protection Law (Count III) against Adams, and breach of contract (Count IV) and bad faith (Count V) against Penn.

Adams filed a motion for summary judgment on February 28, 2001. Because no reply was filed to the motion, on March 28, 2001, Adams filed a motion to grant defendant Adams Abstract Associates' motion for summary judgment as it is unopposed by plaintiffs. Within several days, plaintiffs filed answers to both motions. Both motions are now before this court for disposition.[1]

## LEGAL STANDARD

Our appellate courts have frequently set forth the standard for summary judgment as follows:

"Pennsylvania law provides that summary judgment may be granted only if those cases in which the record clearly shows that no genuine issues of material fact exist, and that the moving party is entitled to judgment as a matter of law. . . . The moving party has the burden of

---

1. Defendant Adams argues that its motion for summary judgment should be granted because plaintiffs failed to comply with the Rules of Civil Procedure. Adams is correct in stating that pursuant to Local Rules 1035.3 and 211, plaintiffs were required to file a responsive brief within 20 days after service of Adams' brief in support of its motion for summary judgment. Pursuant to Local Rules, plaintiffs' brief was due on or before March 20, 2001. Plaintiffs filed their answer to Adams Abstract's motion for summary judgment on March 30, 2001, and subsequently filed their brief in opposition to Adams' motion for summary judgment on April 2, 2001. While the court has noted plaintiffs' failure to comply with the Local Rules, we will not grant defendants' motion for summary judgment on this basis alone. Local Rule 210 suggests possible sanctions for failure to comply with Rule 211. We note that Rule 210(d) provides that the court may "enter such order as the interest of justice requires." Under these circumstances, it would not be in the interest of justice to grant Adams' motion for summary judgment based solely on plaintiffs' tardiness. Plaintiffs are reminded, however, that the court may impose sanctions in the future for continued failure to comply with Local Rules.

proving that no genuine issues of material fact exist. . . . In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. . . . Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. . . . In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment. . . ." *Rauch v. Mike-Mayer,* 783 A.2d 815, 821 (Pa. Super. 2001). (citations omitted)

However, upon the filing of a motion for summary judgment the non-moving party cannot be idle. If the non-moving party has the burden of proof at trial on an essential issue and fails to adduce sufficient evidence on that issue in response to the motion, the moving party is entitled to judgment as a matter of law. *Jackson v. City of Philadelphia,* 782 A.2d 1115, 1119 (Pa. Commw. 2001).

With this standard in mind, the record reveals the following background.

## STATEMENT OF FACTS

On September 13, 1991, plaintiffs purchased property located at 120 Bittle Road, Littlestown, Adams County, Pennsylvania at a tax sale in a case docketed at 91-S-982. The property was formerly owned by Robert E. and Jacquelyn N. Foster. On November 12, 1991, a decree

confirming the sale was entered and on December 23, 1991, the court authorized distribution of the sale proceeds.

After the tax sale was complete, plaintiffs attempted to obtain a $25,000 mortgage from the Adams County National Bank (ACNB) to pay off the prior mortgage with ACNB on the real estate and to cover other expenses related to the purchase of the property. ACNB required either an attorney's certificate of title or title insurance as a condition of mortgage approval. Plaintiffs selected Adams to perform this service because they were familiar with Susan White, one of Adams' employees. Adams is an abstract company that provides title insurance as an agent for Penn.

Plaintiffs were eager to move into their new home and requested that closing be held January 2, 1992. However, because the deed unto plaintiffs was only recorded on December 31, 1991, the title search was delayed and settlement was postponed until January 3, 1992.

During the title search, Ms. White became aware that the record of the tax sale did not reveal a receipt that Mr. Foster had received notice of the tax sale by certified mail.

At settlement, Ms. White reviewed the title insurance policy written through Penn with plaintiffs and specifically, the noted exception of any possible claim Mr. Foster may file. The policy was written as an "Owner's policy" meaning that it would cover the alleged value of the property at $94,000 rather than a "Lender's policy" which limited coverage to the amount of the mortgage to ACNB. As part of the settlement, plaintiffs executed an owners affidavit at the bottom of which, in different

print, was a notation "that they received a copy of Penn Title Insurance Company, report of title, and that they are aware of exceptions to said policy."

On January 15, 1992, the Fosters filed a petition nunc pro tunc in the Court of Common Pleas of Adams County at docket number 91-S-982 asking that the tax sale be set aside and asking that ejectment proceedings initiated against them by plaintiffs be stayed. The sole issue raised in the petition was the alleged lack of notice of the tax sale to Mr. Foster. By order of the same date, a stay was entered and a hearing scheduled. In response to this petition, plaintiffs asked that Adams and/or Penn provide legal counsel to help them defend their interest in the property. Adams advised plaintiffs to make a claim with Penn. Penn, in turn, refused to provide such representation and plaintiffs were therefore forced to hire their own counsel. Subsequently, on March 9, 1993, the Court of Common Pleas of Adams County upheld plaintiffs' interest in the property. An appeal to the Commonwealth Court was denied.

## LEGAL DISCUSSION

In its motion for summary judgment, Adams alleges that plaintiffs have failed to adduce sufficient evidence to proceed on any of the three counts filed against it. Based upon the following analysis, this court grants the motion.

### Count I—Negligence

Plaintiffs allege that at settlement on January 3, 1992, they were advised by Adams that a copy of the Penn policy would be received within several days. They claim

that despite demands for a copy, none was received until August 23, 1993, after the Fosters' appeal to Commonwealth Court was dismissed.

Under Count I, plaintiffs allege that Adams had the following duties and breached those duties as follows:

"(57) Adams Abstract had a duty to:

"(a) Immediately deliver a complete copy of the title insurance policy to the Himmelreichs after the January 3, 1992 closing;

"(b) Immediately deliver a complete copy of the title insurance policy to the Himmelreichs after repeated request for the policy by the Himmelreichs;

"(c) Accurately represent at the closing on January 3, 1992, the matters which would be covered and excluded from coverage under the terms of the title insurance policy;

"(d) Accurately represent at the closing the nature and content of the documents which Adams Abstracts directed and induced the Himmelreichs to sign;

"(e) Accurately represent the value of the insurance policy;

"(f) Accurately represent whether or not any title insurance policy was necessary; and

"(g) Provide to the Himmelreichs at the closing on January 3, 1992, a complete listing of the exceptions or exclusions in the title insurance policy.

"(58) Adams Abstract breached its duty to the Himmelreichs by:

"(a) Failing and refusing to deliver a complete copy of the title insurance policy to the Himmelreichs after the January 3, 1992 closing;

"(b) Failing and refusing to deliver a copy of the title insurance policy to the Himmelreichs even after repeated request by the Himmelreichs for a copy of the policy;

"(c) Delivering a copy of the title insurance policy to the bank and misrepresenting to the Himmelreichs that no policy had been issued;

"(d) Misrepresenting the nature and extent of the coverage in the title insurance policy by representing that all claims against the Himmelreichs' title to and interest in the property would be covered by the insurance policy unless the claims were specifically excluded from coverage; . . .

"(g) Misrepresenting the value of the title insurance policy by representing that all legal costs, fees and expenses of litigation to protect the title to and interest in the Himmelreichs' property would be covered under the policy;

"(h) Misrepresenting the nature and extent of the exclusions in the title insurance policy by representing that any claims arising at case no. 91-S-982 in the Court of Common Pleas of Adams County, Pennsylvania were not excluded from coverage;

"(i) Misrepresenting that ACNB required a title insurance policy when Adams Abstracts knew or had reason to know that no such policy was ever required; and

"(j) By directing and inducing the Himmelreichs to execute documents;

"(i) Which were never fully explained to the Himmelreichs;

"(ii) Which the Himmelreichs had no time to read, and were not given the time to read; and

"(iii) Which were incorrect and inaccurate in light of the fact that Adams Abstracts knew of the ejectment proceedings and knew that the Himmelreichs were not in full possession of the residence."

Adams argues that plaintiffs' claim for negligence must be dismissed because plaintiffs have failed to adduce facts tending to prove that Adams breached a recognized duty to them, or that plaintiffs suffered damages resulting from a breach of that duty. Negligence is proved by (1) a duty or standard of care; (2) a breach of that duty or standard; (3) proximate causation; and (4) actual damages. *Himmelreich v. Adams Abstract,* 42 ACLJ 157, 161 (1998), citing *Carlotti v. Employees of General Electric Federal Credit Union No. 1161,* 717 A.2d 564, 567 (Pa. Super. 1998).

Adams first maintains that plaintiffs have produced no evidence establishing the relevant standard of care. Adams argues that expert testimony is necessary to establish Adams' negligence, and that plaintiffs have failed to produce such testimony. *Id.* Plaintiffs reply that, although it may be necessary to provide expert testimony at trial, it is not required in order to overcome a motion for summary judgment, especially where significant factual issues remain in the case.

Before one can breach a duty to another, that duty must be recognized. This court finds that plaintiffs have not sufficiently established the standard of care that a title insurance agent owes to persons in plaintiffs' position. Under Pennsylvania law, a title insurance agent is defined as one "who on behalf of the title insurer performs the following acts, in conjunction with the issuance of a title insurance report or policy:

"(1) determines unsurability and issues title insurance reports or policies, or both, based upon the performance or review of a search, or an abstract of title; and

"(2) performs one or more of the following functions:

"(i) collects or disburses premiums, escrow or security deposits or other funds;

"(ii) handles escrow, settlements or closings;

"(iii) solicits or negotiates title insurance business; or

"(iv) records closing documents." 40 P.S. §910-24.

Therefore, one of the functions of a title insurance agent is to handle a real estate closing as was done in this case. Furthermore, a title insurance agent must hold a valid certificate of qualification issued by the Insurance Department. 40 P.S. §910-24.1. However, our research fails to reveal any Pennsylvania statutory or case law providing further guidance with regard to the duties of a title insurance agent during closings.

As noted above, plaintiffs allege that Adams owed certain duties to them which were breached. However, plaintiffs have not identified an expert nor an expert report which arguably demonstrates that Adams, as an agent for Penn and as a title abstractor, was obligated to such duties.

In *Storm v. Golden,* 371 Pa. Super. 368, 538 A.2d 61 (1988), the plaintiff alleged that her former attorney breached duties owed to her as part of a real estate transaction. Defendant moved for nonsuit because of the plaintiff's failure to produce expert testimony. The Superior Court rejected plaintiff's contention that expert testimony was unnecessary because of the simplicity of the real estate transaction. The court noted that,

"As a general rule, our Supreme Court has held that 'expert testimony is necessary to establish negligent practice in any profession.' . . . Although such a general statement is not a concrete pronouncement as to any one profession, it exhibits a recognition that when dealing with the higher standards attributed to a professional in any field a layperson's views cannot take priority without guidance as to the acceptable practice in which the professional must operate.

"Generally, the determination of whether expert evidence is required or not will turn on whether the issue of . negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence. . . .

"Here, the underlying question of whether legal malpractice occurred revolves around a lawyer's duty and responsibility in connection with representing a client in a real estate transaction. We do not agree with appellant's assertions that the sale of real estate is an elementary and non-technical transaction which requires only simple common sense. . . . At issue is not the simplicity of the transaction but the duty and degree of care of the attorney. Whether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice in handling a real estate transaction is a question of fact outside the normal range of the ordinary experience of laypersons." 371 Pa. Super. at 375, 377, 538 A.2d at 64-65. (citations omitted)

Substitute the term "title insurance agent" or "title abstractor" for "attorney" and the standard is clear; ex-

pert testimony must be produced in order for plaintiffs to sustain their cause of action for negligence. Despite concluding that expert testimony is necessary we are inclined not to grant summary judgment as to Count I solely because an expert has not yet been identified. There is suggestion that to do so would constitute an abuse of discretion. *Wolloch v. Aiken,* 756 A.2d 5 (Pa. Super. 2000). As noted, plaintiffs do have an obligation to respond to the motion for summary judgment and to produce evidence which raises factual issues. The record reveals disputes as to what was said and done at settlement. Despite the fact that this case has been in litigation nine years, the court has not been advised whether Adams has served expert interrogatories upon plaintiffs. A pretrial conference has not been held and neither discovery deadlines nor a trial date has been set. It may be that an expert, once produced, could describe a duty consistent with plaintiffs' contention, thereby making their factual allegations regarding breach of that duty a jury question. Therefore, it would seem premature to grant the motion on the absence of expert testimony at this time.

Adams also argues that plaintiffs have not been able to demonstrate a causal connection between Adams' alleged negligent conduct and plaintiffs' claimed damages. Plaintiffs set forth their alleged damages in paragraph 66 of their complaint as:

"(a) Costs, fees and expenses to hire legal counsel to litigate all of the claims filed at case no. 91-S-982;

"(b) Out-of-pocket costs and expenses for preparing for and attending the hearings and trials in case no. 91-S-982, and in the related matters;

"(c) Loss of work and work time related to preparing for and attending hearings and trials in case no. 91-S-982 and in the related matters;

"(d) Costs, fees and expenses in defending against all of the claims instituted by Mrs. Foster or in which Mrs. Foster was a party;

"(e) Damages occurring while defending the action at 91-S-982 including:

"(i) the loss of use of the property at 120 Bittle Road; and

"(ii) damages to the property at 120 Bittle Road not otherwise covered by the Himmelreichs' homeowners' policies;

"(j) Costs, fees and expenses to purchase a title insurance policy which allegedly does not cover the damages sustained in this action;

"(k) Costs, fees and expenses to purchase a title insurance policy which was not required by ACNB but only by Adams; and

"(l) Costs, fees and expenses of this action, both current and future, together with additional lost time and wages, all of which would not have been incurred by the Himmelreichs but for Adams and Penn's failure and refusal to pay for each of the items set forth above."

Before discussing the damages issues in detail, it may be appropriate to digress momentarily. Stated briefly by Adams but ignored by plaintiffs is the fact that plaintiffs bought the subject property at the tax sale together with whatever defects or title problems may have existed. The purchase was not contingent upon good and marketable title or on mortgage financing. They were obligated on the purchase unless the tax sale was overturned and set

aside. Their obligation existed before they approached Adams. In fact, their deed was recorded before Adams conducted a title search. One wonders how plaintiffs could have suffered any damages at the hands of Adams when the potential for the Fosters to raise title defects and the corresponding need to defend those challenges existed before Adams was even approached in this matter.

With this in mind, we find it helpful to group the allegations of negligence (assuming them to be true) to determine what, if any, damages could have been caused.

First, there are allegations that Adams failed to give plaintiffs a copy of the title insurance policy. (¶58a, b.) Plaintiffs agree that they can identify no damages were incurred as a result of these allegations.

Second, there is allegation that Adams gave ACNB a copy of the policy while advising plaintiffs that one had not been issued. (¶58c.) We find no item of damage related to that allegation.

Third, they allege that Adams misrepresented that ACNB required a title insurance policy. (¶58i.) In fact, a bank representative did advise plaintiffs they needed either an attorney's title certificate or title insurance. Thus, they needed to incur the expense of one or the other. The only itemized damage which relates to securing title insurance is the cost of title insurance, if any, over the cost of an attorney's certificate of title. However, plaintiffs chose Adams to perform the service not vice versa. Adams is a title insurance agency and not a law office. No legal logic or duty would require Adams to decline plaintiffs' request for services.

Fourth, they allege that Adams misrepresented the nature of the coverage by stating that all claims against

title would be covered by the policy unless excluded, that claims which could be raised by the Fosters were not excluded, and that all cost of litigation to protect their title would be covered under the policy. (¶58h, d, g.) However, that allegation can hardly be considered a misrepresentation because both Adams and Penn agree that if a claim is not excluded it would be covered. Here, the dispute is whether the Fosters' claim was excluded. None of the damages plaintiffs allege relate to the issue of whether the Fosters' claim was excluded except the cost of the current litigation. Absent a statutory or contractual duty, one is not entitled to attorneys' fees in the current litigation. Likewise, one is not entitled to reimbursement for one's time and wage loss incurred in prosecuting the litigation.

Finally, plaintiffs allege that Adams was negligent for directing them to execute the settlement documents without them being fully explained or without plaintiffs having time to read the documents while knowing that the Fosters had possible claims against the property. (¶58j.) Interestingly, it was plaintiffs who pushed for settlement within days and then insisted they could only stay for one hour. With this background, they now allege that they were rushed into signing documents without full explanation.[2] Despite the fact we have little sympathy for persons who put themselves in such a situation and then blame others for their plight, a careful examination

---

2. In 1983 our Supreme Court in *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983), rejected the notion that one who fails to read unambiguous coverage provisions of an insurance contract can avoid its terms. That decision expressly rejected the concept that an agent has a duty to explain exclusions or limitations in an insurance policy.

of plaintiffs' alleged damages fails to indicate that any such expenses were caused by them signing the settlement documents.

Therefore, the court concludes that even if plaintiffs could establish a duty owed them by Adams and a breach of that duty, they cannot legally establish that any of their alleged damages legally flowed from that breach.

### Count II—Fraud

Under Count II, plaintiffs allege that Adams misrepresented the need for title insurance coverage, the extent of the coverage and the exclusions. Adams argues that summary judgment is appropriate because plaintiffs fail to demonstrate evidence sufficient to establish the elements of fraud; specifically that they misrepresented the need for title insurance or the nature of the policy provided.

As stated recently in *Kit v. Mitchell,* 771 A.2d 814, 819 (Pa. Super. 2001),

"To succeed in a fraud case, a plaintiff must establish the following elements . . . '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.' . . . These elements must be proven by clear and convincing evidence." (citations omitted)

One of the difficulties presented in this case is to ascertain what material representations plaintiffs allege that Adams made which were false. Adams' motion for sum-

mary judgment specifically avers that plaintiffs failed to produce evidence of misrepresentations of the need for title insurance and the nature of the policy provided. Plaintiffs produced no evidence to the contrary. We have been presented with no specific utterance upon which to determine whether a statement was material or false. It is clear that depositions were taken of plaintiffs, Ms. White, Mr. Mummert and Adams' owner, Linda Moose. Adams attached relevant portions to support their motion. Plaintiffs certainly had the same opportunity to support their position but failed to do so. Rather, the only portion of the record which supports plaintiffs' claim of fraud is the averments in the complaint. For this reason alone, the court could dismiss Count II.

Plaintiffs aver that Adams misrepresented the bank's requirement to have title insurance. The record fails to reveal any statement made by Adams as to the need for title insurance or that plaintiffs relied on that statement. As noted above, the bank advised plaintiffs what was needed. According to Mr. Himmelreich, they could have used bank's counsel but declined to do so and instead approached Adams.

Plaintiffs further aver that Adams misrepresented the extent of the coverage. Again, the record fails to reveal any statement made by Adams that was contrary to the coverage provided. The complaint avers the misrepresentation to be that the policy would cover all claims not excluded. The only claim at issue is the one by the Fosters. Plaintiffs acknowledge receiving a copy of the report of title at settlement which expressly excepted "Possible outstanding interest of Robert E. Foster; sold out at Tax Claim Bureau sale held September 3, 1991." They

also acknowledge that these exceptions were read by Ms. White at settlement while they read along. The petition filed by the Fosters to set aside the tax sale alleged that only Mr. Foster was not given proper notice of the sale. Although Mrs. Foster joined in the petition, she made no claim that she did not receive notice. She joined primarily as a party to stay ejectment from the premises. Although plaintiffs' brief argues Adams represented that the policy would issue with no exclusion for Mrs. Foster, in fact, the record fails to demonstrate that any claim by Mrs. Foster was excepted from coverage. Therefore, plaintiffs fail to show that Adams made a misrepresentation of existing fact.

Adams also argues that there is no legal nexus between the alleged fraud and the damages claimed. For the same reasons set forth above under Count I, we agree.

Before passing on this issue, we take a brief historical side trip to show that plaintiffs were warned to clarify their fraud claim.

On October 28, 1999, this court issued an opinion on Penn's preliminary objections to plaintiffs' second amended complaint. In that opinion, because of the confusing nature of the allegations, this court ordered plaintiffs to "re-plead and clarify" Count IX of that complaint in which they alleged that Penn committed fraud. *Himmelreich v. Adams Abstract,* 42 ACLJ at 165. Within Count IX, plaintiffs had alleged that Adams, acting as agent for Penn (¶113) misrepresented the necessity and requirement for title insurance (¶116), misrepresented what was included and excluded in the policy (¶116) and then deleted the exclusion relating to 91-S-982. Plaintiffs claim that based upon these representations, they

justifiably and reasonably believed they were covered under the policy for any claim raised by the Fosters. Plaintiffs failed to re-plead Count IX, as directed. Nevertheless, plaintiffs use similar language to make many of the same allegations in Count II of the fourth amended complaint. Therefore, this court's earlier ruling that Count IX was "confusing" is equally applicable to Count II presently. When plaintiffs alleged that they were led to believe that any claim by the Fosters would be covered and that the exclusion for claims by the Fosters had been deleted from the policy we wrote, "[I]f the exclusion was deleted it would mean that coverage existed for the claim and that no misrepresentation has been made by the defendants. The confusion which this inconsistency generates is such that the court is unable to clearly understand what plaintiffs are alleging." *Id.* at 165. The same can be said again. Our Superior Court has recognized the frustration which arises from inconsistent and confusing pleadings when it stated:

"A purpose behind the rules of pleading is to enable parties to ascertain, by utilizing their own professional discretion, the claims and defenses that are asserted in the case. This purpose would be thwarted if courts, rather than the parties, were burdened with the responsibility of deciphering the cause of action from a pleading of facts which obscurely support the claim in question. Parties ought not be allowed to delegate their duties under the Rules of Procedure to our courts." *Himmelreich v. Adams Abstract,* 42 ACLJ at 165, citing *Krajsa v. Keypunch Inc.,* 424 Pa. Super. 230, 236, 622 A.2d 355, 357 (1993).

Plaintiffs still fail to clarify their allegations of fraud.

## *Count III—UTPCPL*

Under Count III, plaintiffs are alleging violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq. The UTPCPL permits private civil actions to be filed where a person purchases goods or services primarily for personal, family or household purposes and suffers an ascertainable loss as a result of an act or practice declared unlawful under the statute. 73 P.S. §201-9.2. Specifically, plaintiffs claim to have purchased services (to obtain title insurance) and goods (namely the title insurance policy). They claim to have been misled by Adams regarding the requirement to purchase title insurance and the coverage and suffered losses as a result thereof. Clearly, the purchase of title insurance in connection with the purchase of a residence qualifies as far as "personal, family or household purpose." Unlawful acts are those acts described in 73 P.S. §201-2(4)(I)-(xii). 73 P.S. §201-3.

Despite some suggestion to do so in prior opinions (43 ACLJ at 166), plaintiffs' complaint does not set forth which statutory "unfair or deceptive acts" they allege were committed by Adams. Nevertheless, the court feels safe in concluding that plaintiffs are proceeding under section 201-2(4)(xv) (knowingly misrepresenting that services are needed if they are not needed) and section 201-2(4)(xxi) (engaging in any other fraudulent or deceptive conduct which creates a likelihood of misunderstanding). Each of these sections is aimed toward preventing fraudulent conduct.

Fraud has not been defined in the UTPCPL but case law holds that it is the equivalent of common-law fraud, *Booze v. Allstate Insurance Co.,* 750 A.2d 877 (Pa. Su-

per. 2000); *Sewak v. Lockhart,* 699 A.2d 755 (Pa. Super. 1997); *Hammer v. Nikol,* 659 A.2d 617 (Pa. Commw. 1995); *Prime Meats Inc. v. Yochim,* 422 Pa. Super. 460, 619 A.2d 769 (1993), *alloc. denied,* 538 Pa. 627, 646 A.2d 1180 (1994).

The reasoning used and conclusion reached as to Count II (fraud) would equally apply to this count.

Accordingly, the attached order is entered.

### ORDER

And now, January 24, 2002, the motion for summary judgment filed by defendant, Adams Abstract Associates, is granted. The complaint against said defendant is hereby dismissed.