J-A25010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEO CANNON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRE RACING ENGINES | : | No. 243 EDA 2018 |

Appeal from the Order December 14, 2017
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2015-004590

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 29, 2019**

Leo "Rease" Cannon ("Appellant") appeals from the Order granting Summary Judgment to Tre Racing Engines ("Appellee").  He also challenges the trial court's order granting Appellee's Petition to Open Default Judgment. We affirm.

The relevant facts are as follows.  In 1997, Appellant purchased an engine for his 1969 Camaro.  Appellant, who owns a business based in Haverford called B&R Auto, contacted Appellee, based in Texas, to repair the Camaro engine.  Taylor Lastor ("Lastor") owns Appellee.

The first time Appellant used Appellee to repair his engine was in 2009. After contacting Appellee and reaching an agreement regarding the repair job, Appellant himself arranged the packing and shipping of the engine through R+L Carriers, and allegedly paid an additional fee to the shipping company for insurance to cover the engine during transit.  **See** Complaint, ¶10.   Upon

completion of the work, Appellee shipped the engine back to Appellant using its shipping agent, Unishippers, from whom it gets a volume discount rate.[1] Appellant reimbursed Appellee for those shipping costs.[2]

In 2010, Appellant again needed work done on the engine and he contacted Appellee. Lastor agreed to install a fogger system in Appellant's engine and arranged shipping through Unishippers so that Appellant could get the benefit of Appellee's volume discounted shipping rate. Unishippers, through its subcontractor, picked up the engine in Haverford and shipped it to Texas. Upon completion, Appellee used Unishippers to ship the engine back to Appellant. The shipping charge appeared on the invoice/receipt that Appellee submitted to Appellant's Company, B&R Auto, for the cost of repairs and shipping.[3] There is no indication that insurance was part of the agreement.

---

[1] Unishipper utilizes subcontractors, including R+L Carriers, to render shipping services.

[2] Appellant averred in his Complaint that he paid an additional fee to the shipping company to insure it "while in transit to Texas and during its return to Pennsylvania." Complaint, ¶10. **See also** Appellant's Response to Interrogatories, annexed as Exh. E to Appellee's Motion for Summary Judgment, at ¶¶ 15(q) and 94 (asserting Appellant "assumed" and/or "believed" the shipment was insured). Appellant's Complaint and his answers to the interrogatories do not indicate that he ever explicitly discussed insurance with Appellee in 2009.

[3] Appellant asserted in his Complaint that "Lastor represented to [him] that Lastor "**could** arrange for the shipment of the … Engine in the same manner as that previously used by [Appellant], but at a lower cost than was available to" Appellant. Complaint, ¶15 (emphasis added).

Appellant again utilized Appellee to repair his engine in July 2013. Lastor made the shipping arrangements with Unishippers and returned the engine to Appellant in 2014.

In December 2014, Appellant again spoke with Lastor about making modifications to the engine and Lastor again arranged the shipping through Unishippers for Appellant's convenience. As part of the arrangement, Lastor downloaded Unishipper's form Bill of Lading, filled out basic information, such as the name of the parties, where the engine was to be picked up, and how it was to be shipped. He then faxed the form Bill of Lading to Appellant for his review and completion. Nothing in the pleadings, admissions, and interrogatories indicates that the parties ever discussed insurance.

Appellant packed up the engine in a crate and confirmed the pick up date with R+L Carriers, Unishippers' subcontractor. On December 9, 2014, R+L picked up the engine at Appellant's business, B&R Auto in Haverford, for shipment to Texas. At that time, Appellant signed and handed the Bill of Lading to the driver. Neither Appellant nor Appellee had written a value of the engine on the Bill of Lading.[4] The engine never arrived in Texas; it is presumably lost.

_____

[4] According to Appellant, "Lastor knew that the tariff of the trucking company hired by Unishippers to transport the Camaro Engine . . . provided that . . . the value of the Camaro Engine would be calculated on a cents per pound basis unless a higher value was declared for the Camaro Engine on the trucking company's Bill of Lading." Complaint, ¶33.

Appellant sought reimbursement from Appellee for the lost engine, to no avail.[5] In May 2015, Appellant filed a Complaint in the court of common pleas of Delaware County, asserting that Appellee was negligent in failing to purchase insurance for the engine, failing to declare the value of the engine on the Bill of Lading, failing to notify Appellant that it had not declared the full value of the engine on the Bill of Lading, and failing to notify Appellant that it had not purchased insurance for the full value of the engine from Unishippers, *See* Complaint, ¶39.

Appellant mailed the Complaint by certified mail in May 2015, but the post office returned it to Appellant's counsel as "unclaimed." Appellant reinstated the Complaint and on July 31, 2015, Appellant personally served Appellee. Appellee obtained an attorney, and in August 2015, counsel for the parties had two conversations. Appellee's counsel did not enter an appearance of record.

On September 11, 2015, pursuant to Pa.R.C.P. 237.1, Appellant sent a Notice to Appellee of his intent to file a Praecipe for a Default Judgment.[6] On

---

[5] Prior to the filing of the Complaint, Appellant filed a claim with R+L Carriers, using R+L's claim form, seeking $27,500.00, which Appellant represented was the value of the engine. Appellant alleged that "[p]ursuant to R+L Carriers' tariff, R+L is obligated to pay Cannon only $77.50 for the lost or stolen Camaro Engine." Complaint, ¶38.

[6] Although Appellee's counsel had been in contact with Appellant's counsel, Appellant did not send the Notice to file Praecipe for Default Judgment to the attorney.

September 28, 2015, the court entered a Default Judgment in the amount of $80,000.00 against Appellee pursuant to Appellant's Praecipe.

On November 2, 2015, Appellee filed a Petition to Open or Strike Default Judgment and for Leave to File Answer. On May 4, 2016, the court held a hearing. Appellant submitted evidence of mailings. Lastor testified that he never received mailings or USPS notices because he lives off a rural road in Texas behind an electric gate where mail carriers throw his mail over the gate, or pin USPS notices to the fence post. The court granted the Petition and entered an Order opening the Default Judgment.

Appellee subsequently filed an Answer with New Matter.[7] Appellant responded on June 6, 2016. Discovery ensued, with Appellant responding to the interrogatories propounded by Appellee's counsel. Neither party took depositions.

On September 19, 2017, Appellee filed a Motion for Summary Judgment and/or Judgment on the Pleadings, attaching copies of the Appellant's responses to its Interrogatories, Bills of Lading, and invoices/receipts.

On December 12, 2017, the Hon. Christine Fizzano Cannon heard oral argument on the Motion for Summary Judgment, at which Appellant's counsel agreed with the court that the failure to insure the engine did not cause the engine to get lost in transit. *See* N.T., 12/12/17, at 26. He also agreed that the loss at issue is the monetary value of the engine, not the engine itself.

---

[7] Appellee did not file preliminary objections in the nature of a demurrer based on the failure of the Complaint to state a cause of action.

*Id*. at 26-28.  He asserted that Appellant "understood" that Appellee would ship the engine insured as he himself had done in 2009, and Appellee failed to do so.

Appellee's counsel argued that any duty owed to Appellant was "contractual/transactional in nature" and "not sufficient to support a negligence claim."  **See** Appellee's Memorandum of Law in Support of Motion for Summary Judgment, filed 9/19/17, at 13, citing **Bruno v. Erie Insurance Co.**, 106 A.3d 48 (Pa. 2014).  **See also** N.T., 12/12/17, at 31.  Appellee also argued that because Appellant asserted negligence for failing to obtain insurance, the issue pertained only to the loss of the ability to bring an insurance claim.  **See** N.T. at 37.  With respect to Appellant's argument that he had a claim for negligence under a theory of gratuitous undertaking set forth in Restatement (Second) Torts § 323, Appellee's attorney observed that, pursuant to case law, Section 323 does not allow recovery of a financial loss and is, in any event, inapplicable.  **See** N.T. at 37, referencing **Carlotti v. Employees of GE Fed. Credit Union No. 1161**, 717 A.2d 564, 567 (Pa. Super. 1998).  Counsel also observed that Appellant acknowledged that he had not read the Bill of Lading before signing it when the engine was picked up for shipment; thus, Appellant "should not be able to recast his failure to

review and complete a contract as someone else's negligence." Appellee's Memorandum of Law in Support of Motion for Summary Judgment, at 18.[8]

On December 13, 2017, Judge Fizzano Cannon entered an Order summarily granting Appellee's Motion for Summary Judgment and entering judgment in favor of Appellee and against Appellant.

Appellant filed a timely Notice of Appeal seeking review of the Orders granting the Petition to Open the Default Judgment and granting Summary Judgment. Appellant filed a Pa.R.A.P. 1925(b) Statement as ordered; the Hon. Chad F. Kenney filed a Rule 1925(a) Opinion.[9]

Appellant raises the following issues for our review:

1. Did the trial court abuse its discretion when it granted [Appellee's] Petition/Motion to Open and/or Strike Default Judgment?

2. Did the trial court abuse its discretion when it granted Appellee's Motion for Summary Judgment?

Appellant's Brief at 6.

---

[8] Appellee's counsel also noted that the failure to state a value on the Bill of Lading represented an omission of a term of the contract for shipping and, even if that were the fault of Appellee, "that is not the sort of duty or obligation that would justify a negligence claim" because such an omission has "no impact beyond the parties and no impact on any greater social policy." Appellee's Memorandum of Law, at 17.

[9] Prior to the filing of the Notice of Appeal, Judge Fizzano Cannon left the Delaware County Court of Common Pleas to join the Commonwealth Court.

**Motion to Open Default Judgment**

In his first issue, Appellant contends that the trial court abused its discretion in granting Appellee's Petition to Open the Default Judgment. He asserts that Appellee did not meet any of the criteria required to open a default judgment. *See id*. at 18, 21-22.

Our standard of review is well-settled. A petition to open a default judgment "is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, [the trial court's order] will not be disturbed on appeal." *Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175 (Pa. Super. 2009) (citation omitted). A court abuses its discretion when, "in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill will." *Id*. (citation omitted).

A court may open a default judgment if the moving party meets the following three criteria: (1) it promptly files a petition to open the default judgment; (2) it provides a reasonable explanation for failing to file a responsive pleading; and (3) it pleads a meritorious defense to the allegations contained in the Complaint. *Id*. at 176. *See also* Pa.R.C.P. 237.3, Explanatory Comment - 1994. The court "cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three of the required criteria." *Myers, supra* at 176. (citation omitted).

With respect to the first prong pertaining to timeliness of the petition to open, "[t]he law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as time[ly]." *Id*. (citation omitted). Instead, the court "must consider the length of time between discovery of the entry of the default judgment and the reason for the delay." *Id*. (citation omitted).

Here, the court entered the Default Judgment on September 28, 2015, and Appellee filed the Petition to Open just over one month later, on November 2, 2015. In concluding that Appellee had timely filed the Petition, the trial court observed the following:

> [ ] Lastor testified that he had only received the hand delivered [C]omplaint on July 31, 2015 and had not received any notices or mailings concerning the litigation or entry of [J]udgment. He further elaborated that he lived in a rural part of Texas on a dirt road with an electric gate protecting the entry of his property. He testified that he and his wife often have mail that is lost and never appears and that the mail is often thrown over the fence. He elaborated on cross-examination that certified mail notices are regularly pinned to his fence and that when received, he does drive the fifteen (15) miles to the post office to sign and accept.
> …
>
> The Default Judgment in this proceeding was entered on September 28, 2015. It appears form the record that Jack Lastor next received a call from an attorney from Texas attempting to collect the judgment. Lastor then immediately call his counsel, [Andrew E.] Guilfoil, who then promptly called [Appellant's] counsel on or about October 30, 2016. The Petition to Open Default Judgment was filed November 2, 2015.
>
> It appears from the record that the trial court found credible the testimony that [Appellee] failed to receive any mail concerning the notice of entry of the Default Judgment. It appears that notice of the Judgment was received by [Appellee] through the phone call

- 9 -

in late October, 2015, and that a Petition to Open was promptly filed. The first prong of the standard to open a default judgment was met.

Trial Ct. Op., filed 3/6/18, at 5-6.

Appellant argues that Appellee did not file the Petition to Open timely, baldly stating various presumptions about when Lastor received various documents and asserting that Lastor willfully ignored communications. *See* Appellant's Brief at 20-21. Appellant is essentially asking this Court to reweigh the testimony provided to the trial court to reach his desired outcome. This we cannot and will not do. *See Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006) (noting that "[i]ssues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." (citation and internal quotation marks omitted)). We discern no abuse of discretion in the trial court's conclusion that Appellee timely filed the Petition to Open.

With respect to the second criteria—whether the defendant provided a reasonable explanation for not filing a responsive pleading—Appellant avers that Appellee's explanation that it did not receive a copy of the 10-day notice of Appellant's intent to Praecipe for a Default Judgment "simply ignores the facts." Appellant's Brief at 21.

The trial court addressed this second requirement as follows:

The Complaint was served on [Appellee] on July 31, 2015. [Appellee] retained counsel who communicated with counsel for

[Appellant] in mid-August, 2015 but failed to enter his appearance. [Appellee] received notice of the Default Judgment in late October, 2015. A period of 90 days elapsed between service of the Complaint and the actual notice of the Default Judgment. Counsel for [Appellee] indicated that it was his belief that he would be notified by [Appellant's] Counsel before any Default Judgment was entered, and was not copied on the notice of intent or the entry of default. [Appellee's] Counsel indicated that he was researching insurance policies, jurisdictional issues and other aspects of the litigation. It appears that the trial court concluded that the second prong was established due to [Appellee] having promptly retained counsel, the belief of counsel that it would receive [c]ourt notices from opposing counsel and due to time needed to review the complicated issues presented in the Complaint involving interstate shipping, bills of lading[,] and an engine loss [sic] in transit.

Trial Ct. Op. at 6-7.

Again, Appellant is asking us to reweigh the evidence presented to the trial court and reach our own credibility determinations. This we will not do. *See Ruthrauff, Inc.*, *supra* at 888. Appellant has not adequately supported his conclusory statement that the trial court abused its discretion. We discern no abuse of discretion.

With respect to the third criteria, Appellant has failed to acknowledge or address the trial court's conclusion that Appellee presented a meritorious defense to the allegations contained in the Complaint. *See* Trial Ct. Op. at 7. Appellant, thus, failed to establish that the trial court abused its discretion in granting Appellee's Petition to Open Default Judgment. Accordingly, we affirm that Order.

- 11 -

**Motion for Summary Judgment**

In his second issue, Appellant challenges the grant of Summary Judgment to Appellee.[10] Appellant asserts that Appellee's agreement to arrange the shipping was "clearly not an enforceable contract because there is no consideration from [Appellant] for [Appellee's] performance." Appellant's Brief at 25. Instead, Appellant argues that Appellee's arrangement of shipping was "simply [ ] an accommodation for a customer" for which recovery lies under Restatement (Second) Torts § 323. *Id*.

We review a grant of summary judgment under the following well-settled standards:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist.
>
> In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party.
>
> Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and

---

[10] It is not until page 34 of his Brief that Appellant summarily concludes the trial court abused its discretion when it granting the Motion for Summary Judgment. The bulk of the argument section of his Brief is dedicated to refuting the legal analysis provided in Appellee's Motion for Summary Judgment, which Appellant asserts is "completely wrong." Appellant's Brief at 24.

submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

On appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

**Weible v. Allied Signal, Inc.**, 963 A.2d 521, 525 (Pa. Super. 2008) (citation and quotation omitted; paragraph breaks added).

We first address Appellant's averment that the shipping arrangement was not part of a contractual arrangement, and therefore the claims in his Complaint were properly asserted under a tort theory.

Pennsylvania is a fact-pleading jurisdiction. Thus, "the complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim." **Steiner v. Markel**, 968 A.2d 1253, 1260 (Pa. 2009); Pa.R.C.P. 1019(a). "[T]he mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling." **Bruno**, 106 A.2d at 69. Under the "gist of the action" doctrine, "[i]f the facts of a particular claim establish that [the] duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to [do] something that the party would not ordinarily have been obligated to do but

- 13 -

for the existence of the contract— then the claim is to be viewed as a breach of contract." *Id*.

"The 'gist of the action' doctrine is designed to maintain the conceptual distinction between breach of contract and tort claims. As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Pennsylvania Manufacturers' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa. Super. 2003) (citation omitted). We have recognized, however, that

> it is possible that a breach of contract also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.

*eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa.Super. 2002).

Here, the contract is not simply "collateral" to the wrong ascribed to Appellee, *i.e.*, the failure to obtain insurance for Appellant. As the court noted in the Rule 1925(a) Opinion, the parties "negotiated for the repair of the engine that had to be shipped back and forth. The offer in December, 2010 to procure cheaper shipping costs by [Appellee] was made as part of the existing transaction to return the repaired engine to [Appellant]." Trial Ct. Op., filed 3/6/18, at 10. Likewise, in the parties' subsequent interactions,

Appellee agreed to arrange shipping so Appellant could receive cheaper shipping charges as part and parcel of their repair agreements. Any obligation on Appellee's part with respect to the arrangement was, therefore, not defined by "the larger social policies embodied in the law of torts." *eToll*, *supra* at 14. Rather, the parties reached a mutual consent. Accordingly, any agreement to obtain insurance would have to have been a term of their agreement, the breach of which would be properly asserted under a theory of breach of contract. Appellant did not assert any breach of contract claims in his Complaint.[11]

Moreover, nothing in the pleadings, interrogatories, or admissions indicates that the parties ever discussed insurance when making their agreement. The parties do not dispute that insurance was never obtained over the years in the parties' shipping arrangements. Further, Appellant acknowledged that he never explicitly discussed the cost of insurance or the value of the engine with Appellee. *See*, *e.g.*, Answer to Interrogatories, ¶ 95 (Appellant acknowledging that he never requested a quote on the cost of insuring the shipment), and ¶99 (Appellant acknowledging that he never checked if insurance was available at the time of pick up and never instructed anyone else to purchase or confirm the purchase of insurance on the engine).

---

[11] We reiterate that Appellee did not file preliminary objections in the nature of a demurrer, and the failure to state a claim upon which relief could be granted was not the basis for the court's dismissal.

Both parties agree that insurance was not obtained in 2014. Accordingly, there are no material facts upon which relief could be granted under a breach of contract theory, even if Appellant had raised a breach of contract claim.

Notwithstanding the above facts, Appellant avers that because he did not pay Appellee to *arrange* the shipping, Appellee's promise to arrange shipping was "an accommodation" gratuitously undertaken, and not part of any contractual arrangement between the two of them. Appellant's Brief at 25. As such, Appellant asserts, Appellee had a duty to obtain insurance to "protect the racing engine and its value," pursuant to Section 323 of the Restatement (Second) Torts. Appellant's Brief at 25, 32. We disagree.

Section 323 of the Restatement (Second) Torts, which has been adopted by the Pennsylvania Supreme Court, provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) Torts, § 323.

Section 323 is not applicable in this case. As noted above, Appellee agreed to arrange shipping through Unishippers, its usual shipping agent, only because Appellee had a contract with Appellant to repair the engine in its

- 16 -

facility in Texas, not because Appellee had a social duty to do so. Moreover, Appellant reimbursed Appellee for the shipping charges it incurred through Unishippers. Appellee did not gratuitously or for consideration ship the engine itself.

Most significantly, when Appellee agreed to arrange the shipping through Unishippers, it did so as a convenience to Appellant, not as a "service rendered . . . as necessary for the protection of the other's person or things." **Restatement (Second) Torts § 323**. Appellee rendered the service of arranging the shipping solely for Appellant's convenience and financial benefit. Accordingly, Section 323 is inapplicable.[12]

In another attempt at obtaining relief under a negligence theory, Appellant asserted that Appellee agreed to ship the engine "in the same manner" that Appellant himself had in 2009, which to Appellant meant that Appellee would purchase insurance on Appellant's behalf. **See** Complaint ¶ 15. **See also** Appellant's Response to Interrogatories, ¶¶15(q) and 94

---

[12] Moreover, this Court has previously observed that "we have been unable to find any binding decision that would impose a duty under § 323 where the harm alleged is merely financial. Indeed, the existing cases would suggest that economic harm is not the basis for recovery." **Carlotti**, 717 A.2d at 567. **See also Sonecha v. New England Life Ins. Co.**, 124 F. App'x 143, 146–47 (3d Cir. 2005) (listing Pennsylvania cases, including **Carlotti**, **supra**, distinguishing between tangible and intangible property for purposes of determining applicability of Restatement (Second) Torts, § 323, and concluding that no duty arises under Restatement 323 because neither an insurance policy nor its proceeds are tangible property).

(asserting Appellant "assumed" and/or "believed" the shipment was insured). This averment has no support. As noted above, nothing in the pleadings, admissions, or answers to interrogatories indicates that Appellant and Appellee ever discussed insurance with respect to the engine. Moreover, nothing in the record indicates that Appellant, in fact, ever told Appellee "the manner" in which Appellant had shipped the engine in 2009, *i.e.*, that he had insured it. Accordingly, this argument fails to overcome the grant of Summary Judgment. *See, e.g., Shaw v. Kirshbaum*, 653 A.2d 12, 17 (Pa. Super. 1994) (concluding that where a doctor, who had communicated to the appellees his belief that a patient would die in the near future without a recommended surgery, undertook to assist in travel and financial arrangements but did not undertake to obtain her informed consent, he would not be found liable for the failure of the surgeon to obtain the patient's informed consent).

In his final attempt at garnering relief under a negligence theory, Appellant avers that Appellee "knew that shipping companies offer insurance for valuable merchandise and [ ] knew or should have known that shipping company tariffs provide only minimal reimbursement for uninsured racing engines." Appellant's Brief at 32. Thus, according to Appellant, Appellee's failure to obtain insurance showed that Appellee failed "to act reasonably when it made arrangements to ship" the engine, which resulted in a physical harm

to his engine and the financial loss of its value. Appellant's Brief at 32; Complaint at § 39. As a matter of law, this averment garners no relief.

In order to establish ordinary negligence on the part of a defendant, a plaintiff must prove the following four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Estate of Swift v. Northeastern Hosp.,* 690 A.2d 719, 722 (Pa. Super. 1997). In any negligence action, "establishing a breach of a legal duty is a condition precedent to a finding of negligence." *Id.*

As noted above, Appellee did not have a legal duty to obtain insurance on Appellant's behalf. Even if it did, the failure to obtain insurance did not cause the harm to Appellant's engine. Rather, it is the loss of the engine, and not the failure to obtain insurance, that caused Appellant's harm.

In conclusion, our review of the pleadings, admissions, and interrogatories, in the light most favorable to Appellant as the non-moving party, and our consideration of the relevant law, supports the trial court's grant of Appellee's Motion for Summary Judgment. We discern no abuse of discretion or error of law. Accordingly, we affirm the Order granting Summary Judgment to Appellee.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/29/19